[Civ. No. 18321.   Second Dist., Div. Two.   Nov. 2, 1951.]

COUNTY OF LOS ANGELES, Respondent, v. PRESTON S. WRIGHT et al., Defendants; PACIFIC LIGHTING GAS SUPPLY COMPANY, Appellant.

[Civ. No. 18320.   Second Dist., Div. Two.   Nov. 2, 1951.]

COUNTY OF LOS ANGELES, Respondent, v. PACIFIC LIGHTING GAS SUPPLY COMPANY, Appellant.

LeRoy M. Edwards and Oscar C. Sattinger for Appellant.

Harold W. Kennedy, County Counsel, and Milnor E. Gleaves, Deputy County Counsel, for Respondent.

WILSON, J.—The sole question for determination is whether plaintiff County of Los Angeles by reason of the grant to it of an easement for road purposes by Los Angeles Investment Company succeeded to the right of its grantor to require defendant Pacific Lighting Gas Supply Company to relocate its pipe line at its own expense, such right having been reserved to Investment Company in its prior grant of a gas pipe-line easement to Pacific Lighting Corporation, predecessor in interest of defendant Pacific Lighting Gas Supply Company.[1]

The two actions, one on a contract between County and Pacific and the other for condemnation, were consolidated for trial. Judgment in each case having been rendered in favor of plaintiff, defendant Pacific has appealed.

There is no dispute as to the facts. Investment Company by deed dated June 1, 1943, granted an easement to Pacific for the installation and maintenance of a gas pipe line. The deed provides in paragraph 4[2] that the "location of said pipeline or lines to be changed by the Grantee to such new location as may be demanded by Grantor in writing whenever

---

[1] On March 22, 1950, the operating properties of Pacific Lighting Corporation, including the facilities involved in the condemnation action, were transferred to Pacific Lighting Gas Supply Company. At the trial the latter corporation was substituted as defendant in place of Pacific Lighting Corporation. Both companies will be referred to herein as Pacific.

[2] "4. The location of said pipeline or lines to be changed by the Grantee to such new location as may be demanded by Grantor in writing whenever a change in the location of said pipeline or lines, or any part thereof, is deemed by the Grantor necessary or convenient to permit of any construction, use or employment which the Grantor may desire to make or carry on, and all costs of making such change in the location of said pipeline or lines as demanded by the Grantor shall be wholly paid and borne by the Grantee. Upon such relocation, such pipeline or lines shall be laid at such depth that the top of said pipeline or lines will at all points be not less than thirty (30) inches below the surface

a change in the location of said pipeline or lines, or any part thereof, is deemed by the Grantor necessary or convenient to permit of any construction, use or employment which the Grantor may desire to make or carry on, and all costs of making such change in the location of said pipeline or lines as demanded by the Grantor shall be wholly paid and borne by the Grantee.'' Paragraph 11 of the deed provides: ''It is further mutually understood and agreed by and between the Grantor and Grantee that each and every one of the conditions, agreements and covenants herein shall inure to the benefit of or bind (as the case may be) the successors and assigns of the respective parties hereto.''

In January, 1948, Investment Company granted to County a road easement in connection with the contemplated improvement of La Cienega Boulevard. The area covered by the deed included part of the pipe-line easement conveyed in 1943 to Pacific.

On March 1, 1948, Investment Company wrote Pacific notifying it that County was ready to begin construction of a

---

level of the ground, except at points crossing deep gulleys or ravines, where said pipeline or lines may be laid at a lesser depth or supported above the ground to prevent soil erosion or damage to the pipeline or lines. The Grantee agrees to commence the work of relocation within fifteen (15) days after receipt of written demand and to prosecute said work diligently to completion. The grantee agrees, however, that if the Grantor should determine that Grantee should locate or relocate its pipeline or lines under any existing street or streets, or street or streets hereafter laid out, that Grantee will do so at its own cost and expense. Grantor agrees that in every instance where a relocation of said pipeline or lines is deemed by it to be necessary, that it will not arbitrarily demand that Grantee shall relocate its pipeline or lines beneath any existing street or streets, or street or streets hereafter laid out, if there is still some other route available therefor over and across Grantor's property that would not in any wise prevent Grantor from subdividing its property and/or from dedicating roads or streets over the same. Grantee further agrees that it will execute and deliver upon demand to the Grantor any and all documents necessary to enable Grantor to effectively subdivide its property, and to execute and deliver to Grantor such other documents as may be required by any governmental laws, rules or regulations now or hereafter enacted pertaining to the subdivision of land. Grantor expressly reserves unto itself the right to at any time subdivide all or any portion of the above described property, including the right-of-way herein. Provided, however, and as a condition precedent, if such relocation as demanded by Grantor shall be outside the area of this easement, Grantor agrees to give Grantee, without additional payment to Grantor of any consideration therefor, an easement covering such new area on the same terms as the present easement and to execute and deliver said new easement to Grantee before the recordation of any new subdivision map or dedication of any street affecting the Grantee herein. To the extent that the new easements are given pursuant to this clause and upon completion of said relocation, the Grantor agrees to quitclaim that portion of the present easement which is superseded by the new easement.''

bridge for the grade separation of Slauson Avenue and the proposed La Cienega Boulevard; that apparently it was essential that a part of Pacific's pipe line be removed "to the extent that it is necessary for construction of the grade separation" and it assumed Pacific agreed "that both of us should cooperate to bring about this result" and "we would appreciate it if you would accept this letter as the formal notice referred to in the easement deed." In response to this notice Pacific wrote Investment Company on March 9, 1948, stating it would be necessary to obtain a new right of way from the latter for the portion outside the limits of Slauson Avenue and submitting a tentative relocation of the pipe line for its approval. Pacific also stated it had "been advised by Los Angeles County Road Department that they will compensate us for our costs involved in the relocating of the facilities and it is, therefore, not necessary to discuss this phase further with you." On March 18, 1948, Pacific again wrote Investment Company stating it was ready to proceed with the relocation of its pipe line. Thereafter, upon learning that County contended it was entitled to the benefits of the provisions of the pipe-line easement, Pacific refused to move its pipe line until it had been compensated for the cost.

On April 6, 1948, County claiming to be the assignee of Investment Company made written demand upon Pacific to move that part of its pipe line affected by the proposed construction of an overpass on Slauson Avenue where it crosses La Cienega Boulevard stating that "any location for your line outside the right of way of La Cienega Boulevard of course would have to be obtained from the Los Angeles Investment Company." Pacific refused to do so until it had been compensated therefor, contending that the conditions and covenants in the pipe-line easement did not inure to the benefit of County. In order to avoid delay in the improvement of the streets, Pacific and County entered into an agreement on April 13, 1948, whereby Pacific agreed to move its pipe line and County agreed to pay the costs of relocation pending a judicial determination as to whether Pacific was obligated to relocate its pipe line at its own expense pursuant to the terms of its pipe-line easement. Thereafter Pacific relocated its pipe line at County's expense subject to the latter's right to sue within one year to recover the cost of the relocation. It is stipulated between the parties that the cost of moving the pipe line was $4,631.90, which is the amount of the judgment rendered in favor of County in the contract action.

The condemnation action was filed on April 12, 1948, both Investment Company and Pacific being named as defendants, Investment Company as the owner in fee simple of parcels 10-18, 10-19 and 10-20 and Pacific as the holder of a gas pipe-line easement traversing the same parcels. The property over which the road easement was granted by the deed of January, 1948, from Investment Company to County was co-extensive with parcels 10-19 and 10-20. About November 30, 1948, a stipulation was entered into between County and Investment Company for the entry of a judgment condemning an easement over parcel 10-18 and other parcels not herein involved. The stipulation further provided that "plaintiff may have a final order of condemnation conveying to it an easement over said property for public highway purposes subject to the rights of lessees, sublessees, holders of easements and rights-of-way."

The interlocutory judgment for condemnation recites that the action "came on by written stipulation as to Parcels Nos. 10-16, 10-17 and 10-18 . . . and said parties having stipulated to the entry of an interlocutory judgment as to said parcels of land;

"Now, therefore, it is ordered, adjudged and decreed: . . .

"That pursuant to said written stipulation on file herein, . . ." upon payment to Investment Company of the sum agreed upon "plaintiff may have a final order of condemnation conveying to it an easement over said parcel for public highway purposes."

Subsequently a final order of condemnation was entered reciting that plaintiff had paid to defendants the sums required by the interlocutory judgment and adjudging that the property be condemned and plaintiff take and acquire an easement over said property for public road and highway purposes.

On April 11, 1949, Investment Company wrote Pacific requesting it to remove its pipe line, pursuant to the provisions of the pipe-line easement, "at such points and places as may be found to lie within the boundaries of said La Cienega Boulevard from approximately 800 feet north of Slauson Avenue southerly to La Tijera Boulevard." This letter was signed by the president of Investment Company who testified at the trial that it was not his intention that the notice include parcel 10-18, since the stipulation above recited had reserved the rights of easement holders in that parcel, and it was his intention merely to cover the area in the vicinity of the Slauson Avenue Bridge. To this letter Pacific replied that

the notice did not comply with the terms of the easement and that it was improper inasmuch as at that time Investment Company had already deeded for road purposes a portion of the property involved and had entered into a stipulation for the compensation to be paid it for the balance of the property. Pacific agreed, however, to proceed with the relocation of its pipe line in order not to delay the improvement of La Cienega Boulevard pending the outcome of its litigation with County and without prejudice to its rights. Thereafter the pipe line was moved and it was stipulated between the parties that the cost of the relocation was $6,766.04, which is the amount of damage claimed by Pacific in the condemnation action.

The trial court found, in the contract action, that the deed conveying the pipe-line easement provided that Pacific "should relocate at its own expense any pipe lines constructed on said easement by said defendant when it became necessary to do so to enable the grantor to construct a road upon said easement, or for the dedication of same for a public highway; and upon the further provision that such relocation should be upon the demand of the grantor and upon the grantor's granting to said grantee another easement for the relocation of said pipe lines." This finding does not coincide with the language in the first sentence of paragraph 4 of the deed hereinbefore quoted in the text of this opinion and in footnote No. 2.

The court concluded that County "is the successor in interest and assign of Los Angeles Investment Company to the full extent of its said easement within the meaning of Section 11 of the deed easement [hereinbefore quoted] executed by said Los Angeles Investment Company as grantor in favor of defendant on June 1, 1943, and entitled to the benefits of its provisions" and that the "notice given to said defendant to relocate its said pipe line was a substantial compliance with the terms of the said deed easement."

In the condemnation action the court determined that County is the successor in interest and assignee of Investment Company within the meaning of Section 11 of the deed of June 1, 1943, conveying the easement and is entitled to the benefits of its provisions; that the notice which the Investment Company gave to Pacific on April 11, 1949, demanding that it relocate its pipe lines so that County could construct La Cienega Boulevard was a substantial compliance with the terms of said deed easement.

Since there is no conflict in the evidence, the findings

and conclusions of the trial court are but conclusions of law and not binding upon this court. (*Leis* v. *San Francisco,* 213 Cal. 256, 258 [2 P.2d 26]; *San Diego Tr. & Sav. Bank* v. *San Diego County,* 16 Cal.2d 142, 153 [105 P.2d 94, 133 A.L.R. 416].) ▮ Furthermore, when there is no conflict in the evidence an appellate court is not bound by the trial court's construction of an instrument based solely upon its terms unaided by extrinsic evidence. (*Estate of Wunderle,* 30 Cal.2d 274, 280 [181 P.2d 874]; *Western Coal & M. Co.* v. *Jones,* 27 Cal.2d 819, 826-27 [167 P.2d 719, 164 A.L.R. 685].)

▮▮ An easement over land is real property and the holder of such easement is entitled to recover damages when such easement is taken or damaged for public use. (Const., art. I, § 14; *Bacich* v. *Board of Control,* 23 Cal.2d 343, 349-50 [144 P.2d 818]; *Rose* v. *State,* 19 Cal.2d 713, 727 [123 P.2d 505].) Pacific is therefore entitled to damages in the amount of the cost of removal of its pipe lines unless the right of Investment Company to compel removal without compensation passed to County by Investment Company's deed to the latter of the road easement. ▮▮ An easement creates an interest in land (*Eastman* v. *Piper,* 68 Cal.App. 554, 560 [229 P. 1002]) and the rules applicable to the construction of deeds apply to instruments conveying easements. (*Id.,* p. 561.) ▮ The terms of the deed conveying the road easement and the rights conveyed thereby are clear and explicit. The conveyance is to County alone and not to its successors or assigns. County did not acquire the fee title to the property but only an easement thereover. There is no reference in the deed to County of the pipe-line easement. Therefore, insofar as the contract case is concerned, County did not succeed to any rights of Investment Company and the latter did not purport to and did not convey or assign to County any such rights.

▮ In the condemnation case County expressly recognized Pacific's rights and easement by joining in the stipulation that a judgment of condemnation for road purposes be entered against Investment Company "subject to the rights of . . . holders of easements" over parcel 10-18, and by the terms of the judgment itself reciting that the case came on for hearing by the stipulation and that the judgment was rendered "pursuant to said written stipulation."

Although Investment Company's right to compel Pacific to remove its pipe line without compensation in the circumstances mentioned in the conveyance of the pipe-line easement was a covenant running with the land which would have passed

to Investment Company's grantee as successor in interest upon a conveyance of the fee title, such right did not pass to County by the conveyance of the road easement and did not attach thereto. "A covenant running with the land binds those only who acquire the whole estate of the covenantor in some part of the property." (Civ. Code, § 1465.) Moreover, while the grantor reserved the right under the conditions specified in the deed conveying the easement to require the grantee to change the location of its pipe line "to such new location as may be demanded by Grantor in writing" the deed also provided that "as a condition precedent, if such relocation as demanded by Grantor shall be outside the area of this easement, Grantor agrees to give Grantee, . . . an easement covering such new area on the same terms. . . ." Obviously County could not designate the new location to which the pipe line should be moved nor could it grant an easement therefor. It cannot claim the benefit of the covenant without accepting the burden which is contained in the same covenant.

The deed conveying the pipe-line easement provided for the removal of the pipe line to a new location whenever a change in location was deemed by the "grantor" necessary or convenient to permit of any construction or use which the "grantor" might desire to make or carry on. Since Investment Company itself was not desiring or intending to construct the roadway or to make any use of the property covered by the road easement, Investment Company's notice to Pacific to remove its pipe line was ineffectual for any purpose. Since County did not acquire the right, either by deed or by condemnation, to compel Pacific to move its pipe line its notice so to do was likewise ineffectual without the payment of the cost of removal.

In the contract case (No. 18320, *County* v. *Pacific Lighting Gas Supply Co.*) the judgment is reversed. In the condemnation case (No. 18321, *County* v. *Wright*) the judgment is modified by striking from paragraph VII thereof the words "without compensation to said defendant, Pacific Lighting Gas Supply Company" and inserting in lieu thereof the following words and figures: "upon payment to said defendant Pacific Lighting Gas Supply Company, or into court for its benefit, the sum of $6,766.04, with interest thereon from July 10, 1950." As modified the judgment is affirmed.

Moore, P. J., and McComb, J., concurred.