[Civ. No. 20839. First Dist., Div. Three. Dec. 31, 1963.]

CITY OF SANTA CRUZ, Plaintiff and Respondent, v. DONALD YOUNGER, Defendant and Appellant.

Emmet L. Rittenhouse and Willaim G. Filice for Defendant and Appellant.

Rodney R. Atchison, City Attorney, and Wyckoff, Parker, Boyle & Pope for Plaintiff and Respondent.

DRAPER, P. J.—Although this is a proceeding in eminent domain, the sole dispute concerns title to land.

In 1927, appellant Younger received a gift deed describing the granted land as bounded on the northwest by Branciforte Creek. The creek's course, as shown by a map made in 1910 and aerial surveys made in 1957, had shifted to the southeast by as much as 50 to 80 feet. The area between the two creek courses is the subject of this appeal. Apparently no owners on either side of the creek noticed the change of its course. There is evidence that the change was "imperceptible" (probably meaning gradual), but there is no showing as to the location of the creek at any given time in the 47-year period.

Before 1920, appellant's grantor owned the land on both sides of the creek. In 1920, she conveyed the westerly portion of her property in five parcels, the westerly ends of which fronted on Market Street, to Silva, Koehler and Galbraith. All these deeds described the property conveyed by metes and bounds, and none referred to Branciforte Creek as the

southeasterly boundary. There is evidence, however, that the metes and bounds descriptions of these parcels placed their southeasterly boundary at the center of Branciforte Creek, as shown on the 1910 map, and each deed was specifically made subject to water rights theretofore transferred. There is testimony that the deed descriptions were not the result of actual surveys, but were taken from earlier surveys and data, or were ''office drawn descriptions.''

When the complaint in this condemnation action was filed in 1958, it described the properties on both sides of the creek as running to its center, and sought to take the bed of the stream and a strip on either side for flood control purposes. Plaintiff city negotiated settlements with four of the owners of lands northwest of the creek and took deeds from them based upon this description. In August 1959, nine months after summons and complaint were served on appellant, the case was tried as to the Armstrong parcel, which adjoined appellant's land on the northwest. Appellant did not appear in that trial, nor did he assert that the description was erroneous, and judgment was for the property described in the complaint, i.e., to the 1957 line of Branciforte Creek. It follows that the jury based its award on the quantity of land so described, thus including a portion of the land now claimed by appellant. Appellant answered April 8, 1960, claiming only the land ascribed to him by the complaint. His claim to the land northwest of the present creek was not suggested until he filed his pretrial statement May 4, 1961. Amended answer asserting the claim was filed June 9, 1961. At trial, appellant for the first time produced a deed from his cousin, his original grantor, which purported to quitclaim to appellant all the land granted in 1927, plus the area now in dispute. This was done by describing the northwesterly boundary of the quitclaim tract in the same terms as used by the grantor for the southeasterly boundaries of the several parcels she had conveyed to Silva, Koehler and Galbraith in the 1920 deeds. This quitclaim deed is dated June 8, 1961, six days before trial. Appellant asserts that it transfers to him the area lying between Branciforte Creek as it was mapped in 1910, and the creek as it actually flowed in 1957.

After nonjury trial, the court found that appellant was not the owner of the disputed area, and this appeal followed.

The parties do not dispute that if the deeds to Silva, Koehler and Galbraith described the land by measurement

and also specified the creek as their easterly boundary, then the creek, however shifted, remains the boundary between these parcels and appellant's land. This is consistent with the rule that visible boundaries prevail over inconsistent measurements (Code Civ. Proc., § 2077).

█ Although the 1920 deeds do not refer to the creek as the southeasterly boundary of the Market Street lots, there is evidence, evidently accepted by the trial court, that the ''office-drawn'' metes and bounds descriptions in fact carried that boundary to the stream as shown on the office maps. This alone would not be sufficient to establish conflict between the metes and bounds description and the stream as a natural boundary. Unless the 1920 deeds are construed as referring to the creek itself as a boundary, the Market Street owners are limited to the description by measurement, appellant's 1927 deed runs only to the creek, and its movement has left an area which was transferred to appellant by the belated quitclaim of 1961.

[█] The intent of the parties is the controlling factor in the construction of deeds (*Hannula* v. *Hacienda Homes, Inc.*, 34 Cal.2d 442, 444-5 [211 P.2d 302, 19 A.L.R.2d 1268]; *Machado* v. *Title Guarantee & T. Co.*, 15 Cal.2d 180, 186 [99 P.2d 245]; *Marlin* v. *Robinson*, 123 Cal.App. 373, 375 [11 P.2d 70]). Thus we look to indicia of that intent.

█ The grantor's reservation of water rights in the creek is a significant factor, difficult of explanation save on the basis that she intended the Market Street grants to include at least the bank of the stream.

Moreover, the Market Street deeds and the 1927 grant to appellant indicate the grantor's intention to dispose of the entire tract through which the stream ran, rather than retain an apparently isolated strip of land. █ We may look to the construction placed upon deeds by the parties in determining their intent (15 Cal.Jur.2d 535). █ Thus the 1927 gift deed to appellant, restricting his northwest boundary to the creek, indicates the grantor's 1920 intention that the Market Street deeds run to the creek on the southeast. Moreover, the 1927 deed described this boundary as ''following along said Branciforte Creek and along the southeasterly boundary of lands of Silva, Koehler and Galbraith,'' thus showing the grantor's view that her 1920 deeds had carried the Market Street properties to the creek. There is no evidence that appellant's grantor ever claimed any dominion over the lands from which the stream had moved, until her

deed 34 years after the original grant to appellant. The grantor, although available to execute her quitclaim six days before trial, did not testify. Appellant, who did testify, refrained from asserting any occupation or use of the disputed land at any time after the grant deed to him in 1927. He did assert that, in 1927, he "believed" he owned land on both sides of the creek (a conclusion difficult to understand in view of the restriction of his deed to the creek as a boundary). He conceded that he had not located any monument or station to identify the lines of the Market Street properties, and there is no evidence that he ever went upon any land of the disputed area. Thus there is no showing of either claim or exercise of dominion over the disputed area by either appellant or his grantor at any time after the 1927 deed.

These factors justify the conclusion that the creek in fact was intended by appellant and his grantor to be the boundary between appellant's land and that of the Market Street owners, provided the metes and bounds descriptions of the Market Street deeds in fact carried those properties to the creek as it existed at the dates of those deeds in 1920.

There is no evidence as to the exact location of the creek in 1920. We know only that it moved between 1910 and 1957. Appellant asserts that the burden was on the city to show that the Market Street deeds in fact ran to the creek as it was in 1920. But it is appellant who seeks compensation for the land he claims northwest of the present stream. ▮ The burden of pleading and proving damages, i.e., the value of the land condemned, is on defendant (*City & County of San Francisco* v. *Tillman Estate Co.,* 205 Cal. 651, 653 [272 P. 585]; *Monterey County* v. *Cushing,* 83 Cal. 507, 510 [23 P. 700]). The amount or extent of the land owned obviously is a major factor in its valuation. It seems reasonable to require condemnee to prove the extent of his ownership, at least when, as in this case, he has acquiesced in the condemner's description limiting his ownership, permitted it to go to judgment against an adjoining owner whose area was increased by the limiting description of his own land, and has by his first answer formally accepted the condemner's description.

The location of the creek in relation to appellant's land, at least as of 1927, was a matter more readily provable by him than by the city. Yet he gave no testimony on this subject, and did not call either his grantor or any adjoining owner. ▮ On this record, there is support for the conclusion

that the Market Street parcels ran to the creek as it flowed in 1920. Thus the reservation of water rights in those deeds implies description of the creek as the boundary, and appellant has failed to show title to the disputed area in his grantor at the time of the 1961 quitclaim.

Judgment affirmed.

Salsman, J., and Devine, J., concurred.