[Civ. No. 30778. Second Dist., Div. Four. Sept. 19, 1967.]

THE PEOPLE ex rel. DEPARTMENT OF PUBLIC WORKS, Plaintiff, Cross-defendant and Respondent, v. LOS ANGELES COUNTY FLOOD CONTROL DISTRICT, Defendant; LEON KUBIC et al., Defendants, Cross-complainants and Appellants.

Allen, Fasman & Wolf, Allen & Fasman, Leonard S. Wolf and Albert H. Allen for Defendants, Cross-complainants and Appellants.

Harry S. Fenton, R. B. Pegram, Richard L. Franck, Philip F. Lanzafame and Robert W. Vidor for Plaintiff, Cross-defendant and Respondent.

KINGSLEY, J.—This action was begun by the state to condemn real property owned by the Los Angeles County Flood Control District. A certain portion of the property sought to be condemned by the state, hereinafter called parcel A, is improved with paved ramps, which ramps provide the only means of ingress and egress to four parcels of land, hereinafter called B, C, D, and E. Defendants own parcels B, D and E and have a nonexclusive easement over a 30-foot strip owned by Standard Oil, hereinafter called parcel C. The location and relation of these parcels is shown on the map appended to this opinion.

In 1953, the state acquired certain real property from Standard Oil in the vicinity of Rosecrans and Summerdale for the purpose of constructing the Long Beach freeway. It was agreed that the state would provide a means of access to Standard Oil's remaining property, parcels B and C. Since the property lying between parcel B and Rosecrans Avenue was owned by the district, the state applied to the district for a permit to construct ramps over the district's real property. The usual permit issued by the district was revocable for flood control purposes, but at the insistence of Standard Oil, the provisions concerning revocability were deleted. The district issued a flood control encroachment permit in favor of the state. The state agreed to pay Standard Oil $3 419 for certain real property, and in 1955 the state promised access to parcels B and C as follows: "Access to grantor's remaining property located easterly of the proposed freeway and westerly of the Los Angeles River will be by means of an access ramp from the north side of Rosecrans Avenue as shown on plans and profiles previously submitted to grantor. The right of grantor to use said ramp over the property of the Los Angeles County Flood Control District is by means of Flood Control District

N
Long Beach Freeway
Levee of Los Angeles River
D
E
30'
C
B
Flood control ramp
District Ramp
Rosecrans Ave.

Permit No. 54024-B dated March 15, 1954, a copy of which is attached hereto marked Exhibit 'A' and by this reference made a part hereof.''

The ramps were constructed by the state, one ramp leading to Standard Oil's property, and the other to the levee of the flood control district. Since the ramps were to be used as a means of furnishing access by the district to the levee of the Los Angeles River, a gate was put up to prevent unauthorized personnel from using the ramp which leads to the top of the levee. There was also a gate leading to the Standard Oil property. After the ramps were completed they were principally used by Standard Oil to inspect and maintain its pipelines which were located on parcel C.

Parcel D, which became landlocked as a result of the construction of the freeway, was owned by the state at this time, and was not sold to Leon Kubic until 1960. The deed to Kubic said the grantee understood that the property was landlocked. This parcel is immediately adjacent to parcel C. After the acquisition of parcel D in 1960 by Kubic, Kubic bought parcel B from Standard Oil in 1961, and a nonexclusive easement from Standard Oil over parcel C. Kubic's purpose in these 1961 negotiations with Standard Oil was to provide access for the parcel of land, parcel D, acquired by him the year before. At some time during these negotiations Kubic bought parcel E from Mr. Willhoit. The deeds to the various parcels were vested in the Janises as to a one-half undivided interest, and the Kubics as to the other one-half undivided interest.

Parcels B and D are in view of the freeway. Defendants, in 1963, made a lease with Pacific Outdoor Advertising Company who put three signs on parcel D, and an electric power plant on parcel B to service lighting of the signs.

In 1963 the state began condemnation proceedings against the district to acquire property on which the ramps have been located and to terminate use of the ramps by defendants but not by the flood control district or Standard Oil.

Defendants filed an answer setting forth their interest in the property and they also cross-complained seeking a declaration of their rights of access. The state's demurrer to the answer and motion to strike the cross-complaint were denied but the demurrer to the cross-complaint was sustained.

Based on a stipulated set of facts the court found that defendants' right of access was a real property interest,

entitling defendants to damages, and that defendants' interests in parcels A, B, C, and D were one "larger parcel" entitling defendants to severance damages.

Appraisers' reports were exchanged; the matter was set for a valuation trial; prior to impaneling a jury the court took evidence on restrictions on defendants' rights of access over the ramps. The court ruled that defendants would not be permitted to present evidence on the loss in value to parcel D, or on a loss of income from the lease with Pacific Outdoor Advertising Company.

Defendants seem to be raising the following issues: That there is insufficient evidence to support the findings that the use of the ramps did not extend to parcels D and E; that defendants had the right to have a jury determine damages as to parcels D and E; that defendants were entitled to prove that an extension of their access rights was reasonably probable in the near future; that evidence of statements made by the district's representatives as to their intent was erroneously excluded; that their cross-complaint based on estoppel against the state should have been sustained; that the court's failure to state grounds for sustaining the demurrer to the cross-complaint was prejudicial; and finally, that defendants should have been permitted to introduce evidence of damages in conjunction with parcel E.

I

Defendants assert that the court's finding that the easement over the ramps did not extend to parcel D, and other related findings, are not supported by the evidence. This is without merit. The appellate court will accept a trial court's interpretation of extrinsic evidence received to aid in the interpretation of an easement where the evidence is conflicting and conflicting inferences may be drawn; but where there is no conflict in the evidence, the interpretation of the instrument becomes a question of law. (*McManus* v. *Sequoyah Land Associates* (1966) 240 Cal.App.2d 348 [49 Cal.Rptr. 592].) Defendants' contention may be summarized as follows: Standard Oil had sought an easement which would afford it access rights to parcels B and C equal to those which it originally had by reason of the fact that those parcels then abutted on a public street; one of those rights, then held, was to use parcels B and C to gain access to real property (such as parcels D and E) adjacent to parcels B and C but separated from the then street by those parcels; had the original

condemnation not taken place, if Standard Oil had thereafter purchased parcels D and E, they could have gained access to the newly acquired property by going from the street across parcels B and C; defendants have all the rights that Standard Oil had under the easement granted to it.

The difficulty with this contention, ingenious as it is, is that the record does not support it. It is not enough to say that there is evidence that Standard Oil desired the exact legal equivalent of the access rights condemned; to sustain defendants' position, there must also be uncontradicted evidence that, in the final settlement, Standard Oil achieved its fullest desire. No such evidence appears in the record. Secondly, we do not think that the evidence impels the desired finding that Standard Oil wanted, or even bargained for, such a total equivalent. All of the evidence concerning Standard's alleged desire to secure access rights "equal" to those then held is in connection with the discussions over the desired removal from the district's contemplated permit of the revocation clause usually included in such permits. The record clearly supports a finding that the equivalent for which Standard was bargaining was an equivalency in time, not an equivalency in use. At the time the permit was granted, Standard owned only parcels B and C; there is nothing to suggest that it, then or ever, contemplated any possible future acquisitions of parcels D or E; it was concerned, legitimately, with retaining a perpetual right of access to the property it then owned; it had, so far as this record discloses, no ambitions to expand its real estate holdings in the area.

It follows that, whether we treat the case at bench as one in which the trial court was entitled to weigh conflicts in the testimony before it, or whether we regard it as a case in which it is for this court to draw its own inferences from the evidence produced below, the result is the same. The trial court could legitimately draw an inference adverse to defendants on the controlling issue; we draw the same inference on our own examination of the record.

Since, therefore, it does not appear that Standard Oil either bargained for, or received, anything more than an easement, perpetual in time, across the district's ramp, for ingress and egress to Standard Oil's then owned property—*i.e.*, parcels B and C—the ruling against defendants was proper.

The record contains evidence as to the existence or nonexistence of limitations on the number or kind of vehicle that

could use the access ramp, and defendants here complain that certain evidence bearing on that issue was improperly excluded. In light of what we have said above, the issue is moot. Neither Standard nor defendants had or have any right to use the access ramp for even a single vehicle traveling to parcels D or E; nothing in the record suggests that the loss of the right for any possible travel over the ramp for the purpose of reaching parcels B or C was not fully compensated, nor do defendants raise any such issue in their briefs here. They contend only that they were improperly denied the opportunity to claim damages for the taking of access rights to parcels D and E. Since they had no such right of access, their claim for damages obviously fails.

II

Defendants assert that they had a constitutional right to have the jury determine damages on parcel D. Whether property constitutes such a unit that the severance of part of it by condemnation justifies the recovery of severance damages is a question of law for the court. (*Oakland* v. *Pacific Coast Lbr. etc. Co.* (1915) 171 Cal. 392 [153 P. 705]; *City of Stockton* v. *Marengo* (1934) 137 Cal.App. 760 [31 P.2d 467].) Defendants argue that, since the court decided that parcel D was in fact part of the larger parcel, the jury should have decided the amount of severance damages for parcel D.

The Constitution does not require a jury trial on any issue other than the amount of compensation. (See *People* v. *Ricciardi* (1943) 23 Cal.2d 390, 402 [144 P.2d 799]; *Laguna Salada etc. Dist.* v. *Pacific Dev. Co.* (1953) 119 Cal.App.2d 470 [259 P.2d 498].) Severance damages can be obtained only where there is an *existing* property right. (See *City of Los Angeles* v. *Geiger* (1949) 94 Cal.App.2d 180, 189 [210 P.2d 717]; *San Benito County v. Copper Mtn. Min. Co.* (1935) 7 Cal.App.2d 82 [45 P.2d 428].) Although an easement is a property right for the taking of which compensation is guaranteed (*County of Los Angeles* v. *Wright* (1951) 107 Cal.App.2d 235 [236 P.2d 892]), the question of whether access rights are impaired is a question for the court. (See *People* v. *Ricciardi, supra.*)

As we have pointed out above, defendants had no right of access over the ramps for travel to parcel D (or to parcel E). This being so, the taking of the access rights over the easement could not, in any way, affect the value of parcels

D or E. Once the trial court had determined (properly as we have seen) the nature and extent of the easement, there was nothing left for the jury to evaluate in relation to parcels D or E. The earlier finding that all five parcels were part of one larger parcel is in no way inconsistent with the later ruling which we here affirm. Had the taking of the access rights over the ramps affected any legitimate travel over them to parcels D or E, severance damages would, of course, have followed: but, since the easement herein taken was not appurtenant to these parcels, taking it severed nothing.

III

Defendants are incorrect in their assertion that they are entitled to prove than an extension of their access rights was reasonably probable in the near future. The bare possibility of prospective acquisition of additional property rights has no bearing on the allowance of severance damages. (*People* v. *Ocean Shore R.R., Inc.* (1948) 32 Cal.2d 406, 424 [196 P.2d 570, 6 A.L.R.2d 1179].) Therefore, the trial court was correct in not submitting this matter to the jury.

IV

Defendants also were not prejudiced by the trial court's failure to designate the grounds on which the demurrer to the cross-complaint was sustained. The failure to do so was error (Code Civ. Proc., § 472d), but defendants have shown no prejudice to them from the omission. The cross-complaint raised no issues that were not raised, and decided, on the complaint and answer. For reasons hereinafter discussed, it was subject to demurrer; the basis of the attack was clearly shown by the moving papers and the opposition thereto; defendants could not have had, and clearly did not have, any misconception as to the ground of the ruling. Compliance with section 472d would have added nothing to their knowledge.

V

It is well settled in this state that, since the defendant in an eminent domain proceeding can plead the existence and extent of his property and the damages by his answer, the proper procedure is to raise those issues in that manner and not by cross-complaint. (*People* v. *Buellton Dev. Co.* (1943) 58 Cal.App.2d 178 [136 P.2d 793].)

Defendants rely on *People* ex rel. *Dept. of Public Works* v. *Clausen* (1967) 248 Cal.App.2d 770 [57 Cal.Rptr. 227]. But

that case merely held that, in the light of changes in the law of governmental liability since the decision in *Buellton,* a defendant could now properly cross-complain for damages for trespass on the property sought to be condemned, where the trespasses alleged were not matters for which damages in condemnation were recoverable. No such claim was made here; as we have said, the attempted cross-complaint raised nothing not raised by the complaint in intervention and the answer thereto. The demurrer to the cross-complaint was properly sustained.

VI

Defendants' original answer raised no issues as to severance damages to parcel E. Thereafter they sought, by amendment, to include that issue. The request was denied. Since defendants had no more right of access over the ramp to reach parcel E than they had as to parcel D, the ruling was proper. Under these circumstances, we do not reach the question of whether or not, had defendants held any such rights, the trial court would have abused its discretion in denying the late request to amend.

The judgment is affirmed.

Files, P. J., and Jefferson, J., concurred.

Appellants' petition for a hearing by the Supreme Court was denied November 15, 1967.