[Civ. No. 53134. First Dist., Div. Three. Mar. 21, 1984.]

REDEVELOPMENT AGENCY OF THE CITY OF CONCORD,
Plaintiff, Cross-defendant and Appellant, v.
MICHAEL TOBRINER et al.,
Defendants, Cross-complainants and Appellants.

## COUNSEL

Lee C. Rosenthal, Naomi A. Vargas, Goldfarb & Lipman, Jefferson Frazier and Miller, Starr & Regalia for Plaintiff, Cross-defendant and Appellant.

Merrill, Thiessen & Gagen, Thiessen, Gagen & McCoy, Brian D. Thiessen, William W. Bassett and Mark L. Armstrong for Defendants, Cross-complainants and Appellants.

## OPINION

**SCOTT, Acting P. J.**—This is an appeal from an order granting a new trial in a condemnation action. The Redevelopment Agency of the City of Con-

cord (the Agency) moved under Code of Civil Procedure section 657 for a new trial on the issue of just compensation. The trial court granted the motion on the ground that it had erred in denying the Agency's motions to strike the valuation evidence proffered by the condemnees.

The owners of the interests condemned (hereafter appellants) also attack as erroneous the trial court's holding that the taking was proper; its granting of nonsuit on their cross-complaint in inverse condemnation; and its failure to consider their request for costs and litigation expenses. The Agency has appealed from the court's order denying judgment notwithstanding the verdict. We affirm in all respects.

I

On May 31, 1978, the Agency filed a complaint in eminent domain against owners, tenants and parties with secured interests in properties in the Concord Shopping Center on Willow Pass Road in Concord (the Concord Center). The property sought to be condemned was described in the Agency's complaint as "parking cross-easement interests" held and enjoyed by the owners, tenants, and secured parties in the real property on which the Concord Center is located. The defendant tenants and secured parties did not actively oppose the condemnation action. The appellants here are the owners of the real property on which the Concord Center is built.

The Concord Center was built in or about 1956. Unlike more modern shopping centers, it is not owned by a single individual or entity. Rather, it is in divided ownership, with approximately 23 separate sets of property owners, owning as many parcels. Most of the buildings are leased to persons who operate businesses on the premises. There are approximately 70 different business tenants in all.

The property interests at issue in this case are nonexclusive appurtenant easement rights over an area of real property in the rear parking lot of the Concord Center. These nonexclusive appurtenant easement rights are held by the appellant owners and their tenants pursuant to an easement agreement.

Included within the provisions of the easement agreement are restrictions stating that no buildings, fences or obstructions could be constructed in the parking easement areas; and that all tenants, subtenants, and customers are entitled to use all of the parking areas at all times on a nonexclusive basis. The easement agreement specifically provides that "All covenants of the parties hereto are expressly declared to be binding upon the heirs, executors, administrators, successors and assigns of the respective parties hereto,

*and are and shall be appurtenant to and run with the real property described in Exhibit 'A' hereto and each and every parcel thereof."* (Italics added.) Each owner's separate parcel includes not only a building site, but appurtenant easement rights for parking purposes in front of and to the rear of the building site. Each such easement is burdened by the nonexclusive reciprocal easements in favor of all the other owners and tenants for parking and for automobile and pedestrian ingress and egress. Thus, each owner and tenant has parking rights over all the parking areas in the Concord Center.

No fee interests are being condemned in this action. The land subject to development was purchased by Levitz Furniture (Levitz) with the encouragement of the Agency, prior to the commencement of this condemnation action. The Agency had previously included the Concord Center within its plans for a downtown Concord redevelopment area, on account of perceived physical and economic deterioration of the Concord Center and the failure of the owners to develop or adequately maintain the rear portion of the Concord Center. This area, which had never been developed because of the inability to obtain the *unanimous* agreement of the various owners and tenants necessary to eliminate the easements and restrictions on that area, was underutilized, in bad repair, and not necessary for the parking needs of the Concord Center tenants and owners. The Agency felt that the development of a Levitz store would revitalize the entire Concord Center and eliminate the problems associated with the rear area.

Once it had purchased a fee interest in a portion of the land in the rear area of the Concord Center, Levitz, like the other owners and tenants, obtained the right to park in all parking areas of the Concord Center. But it could not erect any building to house its proposed furniture store on its property, because the land was burdened by the parking easements and building restrictions. Levitz sought to obtain a voluntary agreement with the owners and tenants to relinquish the easements and restrictions over Levitz's parcel. These attempts were unsuccessful, because the required unanimity could not be arranged. The Agency then brought this action to condemn the easements.

## II

The central issue before us is the proper method of valuation of the easements and restrictions sought to be condemned. In granting a new trial, the court below ruled that the method employed by the appellant owners' only expert witness was improper, and should not have been admitted in evidence. Appellants contend that the approach used by its expert witness was permissible, and the trial court committed no error in admitting it at trial.

We conclude that the method of valuation utilized by appellants was improper, that it should not have been admitted in evidence at trial, and that the trial court was correct in ordering a new trial.

■ The well-established legal standard for evaluating an easement requires an analysis of the decrease in value of the dominant estate (or dominant tenement) resulting from the taking of the easement. The measurement of this decrease must be derived from an appraisal of the value of the dominant estate before and after the taking. This approach has been utilized in every reported eminent domain case in the United States involving the condemnation of easements appurtenant, and is the law in California. (*United States* v. *Welch* (1910) 217 U.S. 333 [54 L.Ed. 787, 30 S.Ct. 527]; *Hemmerling* v. *Tomlev* (1967) 67 Cal.2d 572, 575 [63 Cal.Rptr. 1, 432 P.2d 697]; *Yuba County Water Agency* v. *Ingersoll* (1975) 45 Cal.App.3d 452, 455 [119 Cal.Rptr. 444]; *People* ex rel. *Dept. of Public Works* v. *Logan* (1961) 198 Cal.App.2d 581, 586 [17 Cal.Rptr. 674]; 27 Am.Jur.2d, Eminent Domain, § 322, p. 145; 3 Miller & Starr, Current Law of Cal. Real Estate (rev. ed. 1977) Easements, § 18:70, pp. 390-391.) ■ The trial court properly ruled *in limine* that all valuation evidence must be based on a market appraisal of the dominant estates and the diminution in value of each dominant estate, measured separately, as a result of the taking of the easements; and further, that appellants could not base their evidence on the value of the servient estate underlying the easements or the development potential of that land.

The record before this court reveals that appellants ignored the trial court's rulings *in limine*. Instead, they offered in evidence theories of just compensation utilizing valuation methods and approaches that were based on an evaluation of the beneficial impact of removal of the easement restrictions on the development potential of the Levitz fee—that is, the servient estate underlying appellants' easements—rather than the actual reduction in value suffered by the dominant estates as a result of the condemnation of the easements. Because this evidence was improper, misleading, and incorrect as a matter of law, it should have been excluded.

From the outset, appellants based their claim for compensation on the fee simple value of the *servient estate* underlying the easements at issue. Appellants' expert, Mr. Floyd Clevenger, first estimated the unencumbered value of this land at $4 per square foot. He then allocated 75 percent of that value (or $3 per square foot) to the surface easement rights belonging collectively to the Concord Center owners, and 25 percent to the owner of the underlying fee (Levitz). Clevenger's own pretrial declarations and statements indicate that this allocation of values between the easements and the servient fee was highly conjectural and speculative, and that it was based

on his assumptions regarding the development potential of the property. No foundation was ever offered for this evaluation other than Clevenger's own subjective judgment. Appellants simply multiplied the $3 per square foot figure times the area of the surface easements sought to be taken, as described in the Agency's amended complaint (approximately 136,000 square feet), *plus* the area claimed by appellants in their cross-complaint in inverse condemnation (approximately 259,000 square feet), to produce a total claimed compensation value of approximately $1,185,000. Finally, this figure was allocated to the various dominant tenements according to a mathematical formula used by the Concord Center for apportioning operating or maintenance costs.

After preliminary testimony outside the presence of the jury, the trial court reaffirmed its earlier *in limine* orders, and ruled further that appellants could not use a single gross figure for the value of the easements and allocate that total among the owners on the basis of the Concord Center's formula for apportioning maintenance expenses. Thereafter, at trial before the jury, appellants attempted to recast their evidence in a form that would appear to comply with the court's orders. Thus, Clevenger now testified that his evaluation of appellants' compensation claim was based on an appraisal of the decrease in value of each dominant tenement.

However, appellants' valuation method actually remained unchanged. Appellants never produced any actual appraisal of the estimated value of each dominant estate *after* the taking of the appurtenant easements. This time, Clevenger simply allocated the same total value estimate that he had used before trial ($1,185,000) among the separate dominant tenements on the basis of land area rather than apportioned operating expense, resulting in a "damage" figure of approximately $0.76 per square foot over the entire Concord Center. On this basis, he generated a "loss" estimate for each dominant estate from his original evaluation of the value of the servient estate. Rather than appraising the value of each dominant tenement both before and after the taking and then comparing the two values to determine the actual loss or damage to the owners, appellants simply turned the procedure on its head by subtracting a predetermined "loss" figure from the appraised pretake value of each dominant tenement to come up with an artificial "after" value for each appellant's parcel. In short, appellants' procedure was the *reverse* of what the trial court had ordered them to follow.

Although appellants attempt to portray evidence given by their expert at trial as a legitimate evaluation of the diminution in value of each dominant tenement, it is clear that this was not the case. Clevenger admitted on cross-examination that all he had really done was to divide up the predetermined

$1,185,000 figure, derived from appraising the unencumbered development potential of the servient fee underlying the easements, among the parcels of the various dominant estate owners. At first, the trial court appeared to give some credence to appellants' assertion that they were presenting evidence of the loss to the dominant tenements; it therefore denied the Agency's repeated motions to strike Clevenger's testimony. After the jury returned a verdict of approximately $750,000 for appellants, the court granted the Agency's motion for a new trial.

█ A trial court's discretion to grant a new trial is quite broad. (*Jiminez* v. *Sears, Roebuck & Co.* (1971) 4 Cal.3d 379, 387 [93 Cal.Rptr. 769, 482 P.2d 681, 52 A.L.R.3d 92].) █ The record clearly indicates that prejudicial error occurred at trial because the court had allowed the admission of evidence based on an invalid measure of value. (*Boston Chamber of Commerce* v. *Boston* (1910) 217 U.S. 189, 195 [54 L.Ed. 725, 727, 30 S.Ct. 459]; cf. *People* v. *La Macchia* (1953) 41 Cal.2d 738, 754 [264 P.2d 15], disapproved on other grounds in *County of Los Angeles* v. *Faus* (1957) 48 Cal.2d 672, 680 [312 P.2d 680].) The new trial was therefore properly granted.

### III

Appellants next argue that the interests at issue here are not merely parking easements, but are restrictive covenants or equitable servitudes giving them the right to control the development, use and operation of the servient tenement. Thus they contend that valuation based on the benefit to the servient tenement was proper here. █ However, courts in condemnation cases use the same method of valuation for restrictive covenants and equitable servitudes as they employ for appurtenant easements.

In *Southern Cal. Edison Co.* v. *Bourgerie* (1973) 9 Cal.3d 169, 172-175 [107 Cal.Rptr. 76, 507 P.2d 964], the Supreme Court held that a building restriction in a deed constituted property, and that the owner of the dominant tenement was entitled to compensation for termination of the restriction by a condemnor exercising the power of eminent domain over the servient tenement. (Cf. *Riley* v. *Bear Creek Planning Committee* (1976) 17 Cal.3d 500, 510-511 [131 Cal.Rptr. 381, 551 P.2d 1213].) The court's discussion of its holding in *Bourgerie* makes clear that the loss to be compensated when such a building restriction is taken is the *damage* to the *property* of the landowner entitled to enforce the restriction. The court pointed out that the amount of damage to the owners of the restriction would vary from substantial to negligible, depending on such variables as the character of the improvement to be made on the property subject to restriction (e.g., parks or access roads versus schools or fire stations); and the proposed improve-

ment's proximity to or distance from the property of the owner of the restriction. (*Bourgerie, supra,* 9 Cal.3d at p. 174.) "[A] condemner need only selectively join in the action *landowners whose property is most likely to be damaged* by the violation of the building restriction; there are other remedies for excluded owners who anticipate the improvement will result in *damage to their property.*" (*Id.,* at pp. 174-175, italics added.)

The court in *Bourgerie* cited and relied upon cases in other jurisdictions uniformly holding that the applicable measure of damages for the condemnation of restrictive covenants or equitable servitudes is the same as that used for evaluating an easement appurtenant: the depreciation in the fair market value of the dominant tenement, measured before and after the taking. (*Id.,* at p. 172; *Horst* v. *Housing Auth. of County of Scotts Bluff* (1969) 184 Neb. 215 [166 N.W.2d 119, 121]; *Meredith* v. *Washoe County School District* (1968) 84 Nev. 15 [435 P.2d 750, 752-753]; *United States* v. *Certain Land in City of Augusta, Maine* (D.Me. 1963) 220 F.Supp. 696, 700-701; *School District No. 3* v. *Country Club of Charleston* (1962) 241 S.C. 215 [127 S.E.2d 625, 627]; *Town of Stamford* v. *Vuono* (1928) 108 Conn. 359 [143 A. 245, 249]; *Allen* v. *City of Detroit* (1911) 167 Mich. 464 [133 N.W. 317, 320].)

In short, whether they are called restrictive covenants, equitable servitudes, or easements, the interests at issue in this case are property interests in the constitutional sense. (*Chapman* v. *Sheridan-Wyoming Co.* (1950) 338 U.S. 621, 626-627 [94 L.Ed. 393, 398-399, 70 S.Ct. 392]; *Southern Cal. Edison Co.* v. *Bourgerie, supra,* 9 Cal.3d at pp. 172-174, & fns. 3, 4.) When such interests are taken by eminent domain, the owner of the land for whose benefit the restrictions were imposed is entitled to compensation for damage to the dominant estate, measured by the diminution in value of that property as a result of the taking.[1]

---

[1] Appellants cite two cases for the proposition that the measure of compensation for restrictive covenants is the diminution in value of the *servient* tenement, as measured by the difference between the restricted and unrestricted value of that property. (*Hartford Nat. B. & T. Co.* v. *Redevelopment Agcy., etc.* (1973) 164 Conn. 337 [321 A.2d 469]; *Herr* v. *Board of Education* (1912) 82 N.J.L. 610 [83 A. 173].) These cases are completely inapposite to the issue before us and distinguishable from the facts of this condemnation. In *Hartford,* the court was considering the value to be given an easement *in gross*: that is, one without any specific property for whose benefit the easement was created. Unlike in our case, there was no dominant tenement or benefited property to be considered in *Hartford.* An easement in gross exists *independently* of the ownership or possession of any specific land, and constitutes a *personal* right to use the land of another. (*Hartford, supra,* 321 A.2d at pp. 471-472; Rest., Property, §§ 453, 454.) The method of evaluating compensation for condemnation of an easement in gross is different from that used for easements appurtenant such as are involved in the instant case; the approach taken in *Hartford* is sanctioned by the Restatement of Property for easements in gross, and is similar to the approach of California cases for such interests. (Rest., Property, §§ 507, 508; 3 Miller & Starr, Current Law of Cal. Real Estate, Easements, *supra,* at pp. 390-391; *County of Los Angeles* v. *Wright* (1951)

## IV

Turning to the issue of whether the taking itself was proper as a matter of law, we find no reason to reverse the decision of the trial court. The findings of public use, necessity and blight were all supported by substantial evidence. With regard to public use and necessity, appellants' assertion that the development of the Levitz facility does not conform to the Agency's redevelopment plan does not bear scrutiny. (*Redevelopment Agency* v. *Herrold* (1978) 86 Cal.App.3d 1024, 1029-1031 [150 Cal.Rptr. 621].) ■ And as to blight, appellants' failure to challenge the blight finding within 60 days bars their subsequent challenge in this condemnation action. (Health & Saf. Code, §§ 33368, 33501; *Sweetwater Valley Civic Assn.* v. *City of National City* (1976) 18 Cal.3d 270, 277 [133 Cal.Rptr. 859, 555 P.2d 1099].)

## V

Appellants cross-complained below, seeking compensation for the alleged "taking" of certain portions of land in the Concord Center in inverse condemnation. The trial court granted the Agency's motion for nonsuit on this cross-complaint. There is no merit to appellants' contention of error in this regard. ■ The determination of whether an inverse taking has occurred is a nonjury question, even when there are factual questions involved. (*Orpheum Bldg. Co.* v. *San Francisco Bay Area Rapid Transit Dist.* (1978) 80 Cal.App.3d 863, 868 [146 Cal.Rptr. 5].) The evidence in the record clearly shows that, with respect to the portions of the Concord Center for which appellants claim compensation in inverse condemnation (the inverse area), appellants retained all cross-easement rights after the taking that they had beforehand.

Appellants' theory is apparently based on the theory that Levitz "used up" parking spaces in the construction of its building, and these parking spaces are no longer available to the other owners should they choose to expand their own structures or collectively develop the rest of the Concord Center. However, appellants' own appraiser admitted that there was ample parking available in the Concord Center after the construction of Levitz's facility, and that the loss of parking did not prevent any appellants from developing buildings on their parcels to the fullest extent permitted under

107 Cal.App.2d 235, 236-241 [236 P.2d 892].) The other case cited by appellants, *Herr* v. *Board of Education,* concerned the condemnation of property *in fee* which was subject to building restrictions, and is distinguishable on its facts from the instant case. In any event, it has been limited by subsequent New Jersey cases, and is not in keeping with *any* of the more recent decisions on the question of compensation of building restrictions. (*State, Commissioner of Transportation* v. *Orenstein* (1973) 124 N.J. Super. 295 [306 A.2d 479, 483].)

the Concord Center's own restrictions and the zoning and building regulations of the City of Concord. The witness also conceded that none of the existing buildings had suffered a loss of rents or income; that the Levitz store had no negative competitive effect on the other businesses in the Concord Center; that the design, appearance and usage of the Levitz facility had no undesirable impact on other properties and businesses in the Concord Center; and that the owners still possessed the right to restrict building or "control development" in the inverse area, since the owners' easements over the inverse area have not been extinguished.

Whatever effect Levitz has on the availability of parking space to appellants—whether for actual parking or for hypothetical development—that impact is the direct result of three factors, *none* of which is a product of this condemnation. First, Levitz's previous *purchase* of property in the Concord Center included the purchase of all the parking easement rights appurtenant to the land bought by Levitz. Thus, Levitz *bought* the use of these parking spaces from appellants; it was not taken from them as a result of condemnation.

Second, Levitz's rights to use the parking spaces at issue, which it paid for when it bought its fee interest in the servient estate, are the *same* rights possessed by appellants. These rights are the creation of the easement agreement, which gives every owner of land the right to park in all of the Concord Center's parking areas.

Finally, the amount of parking "used up" by Levitz is a direct consequence of the City of Concord's parking ordinance as applied to the Concord Center's ownership and easement structure. ■ As a general land use regulation applicable to all development, Concord's parking ordinance will result in a "taking" only if an owner's rights to beneficial use of his property are drastically curtailed. (*Agins* v. *City of Tiburon* (1979) 24 Cal.3d 266 [157 Cal.Rptr. 372, 598, P.2d 25], affd. (1980) 447 U.S. 255 [65 L.Ed.2d 106, 100 S.Ct. 2138].) Such is not the case here. The mere conjunction of the parking ordinance and the condemnation in this case does not convert an otherwise noncompensable regulation into a compensable one. (*People* ex rel. *State Public Works Bd.* v. *Talleur* (1978) 79 Cal.App.3d 690, 698 [145 Cal.Rptr. 150]; *People* ex rel. *Dept. Pub. Wks.* v. *Curtis* (1967) 255 Cal.App.2d 378, 383 [63 Cal.Rptr. 138]; *County of Santa Clara* v. *Curtner* (1966) 245 Cal.App.2d 730 [54 Cal.Rptr. 257].)

Considering the evidence in the record in a light most favorable to respondent, and giving every intendment and presumption to the judgment of

the trial court, we find that the record fully supports the judgment for the Agency on the cross-complaint in inverse condemnation.[2]

## VI

We do not agree with the Agency that the trial court should have granted its motion for judgment notwithstanding the verdict. This matter should be retried, with appellants given the opportunity to prepare and present to the jury evidence that specifically and unambiguously addresses the legitimate valuation question before the court: what was the amount of the diminution or depreciation in value of appellants' own separate, individual fee interests in the Concord Center, measured by a comparison of the fair market value of those parcels both before and after the taking. The evidence introduced by the Agency is not necessarily the only possible appraisal of those damages. Of course, any evidence sought to be introduced at the new trial of this matter must comply with the standard set forth herein, taking into account only the loss or damage to the dominant estates and not the benefits which may inure to the servient land underlying the easements as a result of the removal of those easements and the restrictions connected therewith.

The judgment is affirmed. Each party to bear its own costs.

Feinberg, J.,* and Barry-Deal, J., concurred.

A petition for a rehearing was denied April 20, 1984, and the petition of defendants and appellants for a hearing by the Supreme Court was denied May 16, 1984.

---

[2]Since we have already found that appellants' theory of valuation was faulty and legally inadmissible, we need not consider at length appellants' argument that they are entitled to compensation for the entire "inverse area" as part of their compensation for the actual take under a "pad theory" of analysis. That theory is inextricably bound up with appellants' invalid method of evaluating the take, and cannot be considered or admitted on retrial in any event.

*Retired Associate Justice of the Court of Appeal sitting under assignment by the Chairperson of the Judicial Council.