[No. A039314. First Dist., Div. Three. Oct. 10, 1989.]

REDEVELOPMENT AGENCY OF THE CITY OF CONCORD, Plaintiff and Respondent, v.
MICHAEL TOBRINER et al., Defendants and Appellants.

**[Opinion certified for partial publication.†]**

---

† Pursuant to California Rules of Court, rules 976(b) and 976.1, this opinion is certified for publication with the exception of parts III C. through F. and IV.

**COUNSEL**

Burton J. Goldstein, Goldstein, Barceloux & Goldstein, Gideon Kanner, Janet A. Econome and David Collins for Defendants and Appellants.

Lee C. Rosenthal, Goldfarb & Lipman, Jefferson Frazier and Miller, Starr & Regalia for Plaintiff and Respondent.

**OPINION**

**WHITE, P. J.**—The individual owners of the separate parcels of land located in the Concord Park and Shop Center on Willow Pass Road in

Concord (the Concord Center) appeal from a judgment in condemnation finding that their nonexclusive appurtenant easement rights condemned herein were of no value, and ordering nothing in compensation for the taking thereof by the Redevelopment Agency of the City of Concord (the Agency). The judgment from which this appeal is made was entered at the close of the second trial in this eminent domain proceeding, following our previous remand in *Redevelopment Agency* v. *Tobriner* (1984) 153 Cal.App.3d 367 [200 Cal.Rptr. 364], certiorari denied 469 U.S. 882 [83 L.Ed.2d 187, 105 P.2d 250] (hereafter *Tobriner I*). We affirm.

## I

The factual background of the Agency's complaint in eminent domain is set forth in *Tobriner I*. As stated there, the only property interests which the Agency sought to condemn in bringing this action in eminent domain were nonexclusive easements for parking and automobile and pedestrian ingress and egress held by the appellant owners over an area of real property in the rear portion of the Concord Center parking lot.[1] This area, some 136,000 square feet in size, was purchased by the Levitz Furniture Company (Levitz) at a state tax delinquency sale. However, appellants' easements prevented Levitz from erecting any structure on its land. Levitz was unable to obtain the necessary unanimous consent of the owners to relinquish their easements and concommitant restrictions over Levitz's parcel. The Agency therefore brought this eminent domain action to condemn appellants' easements. The Agency has not sought to condemn any fee interests in this action. (*Tobriner I, supra,* 153 Cal.App.3d at pp. 370-371.)

Following a trial in which evidence was presented by expert appraisal witnesses on behalf of both the Agency and appellants, the jury returned a verdict of approximately $750,000 for appellants. The trial court then granted a motion by the Agency for a new trial on the grounds that prejudicial error had occurred at trial because of the court's admission of appraisal evidence offered by appellants based on an invalid method of evaluation. On

---

[1]These nonexclusive easements were held by appellants pursuant to an easement agreement among the owners, who separately owned the various individual parcels in condominium fashion within the bounds of the Concord Center. Under the easement agreement, no buildings, fences or other obstructions can be constructed within the parking easement areas. All owners, tenants, subtenants and customers are entitled to use all of the parking areas within the Concord Center at all times, on a nonexclusive basis. The easements are appurtenant to the various individually owned parcels within the Concord Center. Thus, each such parcel includes not only a building site, but parking rights over the entire parking area of the Concord Center as an express easement appurtenant to ownership of the parcel itself. Each such easement in turn is burdened by the nonexclusive reciprocal easements of all the other owners for parking and ingress and egress purposes. (*Tobriner I, supra,* 153 Cal.App.3d at pp. 370-371.)

appeal, this court affirmed both the new trial order and the trial court's denial of the Agency's motion for judgment notwithstanding the verdict. We held that appellants had failed to offer proper valuation evidence under the applicable legal standards for evaluating appurtenant easements in eminent domain proceedings. (*Tobriner I, supra,* 153 Cal.App.3d at pp. 370-374.)

In our earlier opinion, we reaffirmed that the correct measure of damage for the taking of an appurtenant easement is the diminution in value of the dominant estate by the loss of the easement. We remanded for retrial to give appellants another opportunity "to prepare and present to the jury evidence that specifically and unambiguously addresses the legitimate valuation question before the court: what was the amount of the diminution or depreciation in value of appellants' own separate, individual fee interests in the Concord Center, measured by a comparison of the fair market value of those parcels both before and after the taking." (*Tobriner I, supra,* 153 Cal.App.3d at p. 378.) Although we naturally acknowledged that the Agency's evidence of value "is not necessarily the only possible appraisal of those damages," we specifically cautioned that "any evidence sought to be introduced at the new trial of this matter must comply with the standard set forth herein, taking into account only the loss or damage to the dominant estates and not the benefits which may inure to the servient land underlying the easements as a result of the removal of those easements and the restrictions connected therewith." (*Ibid.*)

On remand, the case was set for a second trial on October 28, 1985. Appellants failed to make their pretrial disclosure of appraisals on the date set for such disclosure, instead moving for a continuance. After initially denying the motion for a continuance, the trial court upon reconsideration granted a continuance to March 24, 1986, on the condition that appellants would be required to pay the Agency $5,000 as reimbursement for costs of trial preparation.

Appellants disclosed their valuation data in February 1986. Mr. Floyd Clevenger, the appellants' expert appraiser at the first trial, was again designated as an expert. His stated opinion of the overall loss was $1,321,242, up from his previous estimate of $1,185,000. Appellants' second designated appraiser, Mr. Desmond Johnson, offered a still higher appraisal of $1,392,000.[2] Mr. Fred Doster, the manager of the Concord Center Owners'

---

[2] There are certain discrepancies between the figures that appear in Johnson's valuation statement submitted in February 1986 and his testimony regarding his valuation at the hearing on respondent's motion *in limine* in April 1986. We have been unable to find any explanation for these discrepancies in the record or the briefs. They do not, however, in any way affect the outcome of this case.

Association, was also designated as an expert witness by appellants. His valuation statement, purportedly based on the capitalization of income method of evaluating property, offered a $1.6 million loss appraisal.

On March 27, 1986, after the trial date had again been continued at appellants' request, the Agency moved *in limine* to exclude the testimony of appellants' three designated valuation experts at trial. Pursuant to stipulation between the parties, the trial court heard the testimony of the experts and read their deposition transcripts in considering the Agency's motion. At the end of the hearing, the trial court granted respondent's motion *in limine* in large part. Appellants then requested a further continuance in order to have another opportunity to undertake a new appraisal and evaluation of the property. This continuance was granted, and the matter was set for trial on October 6, 1986. The date set for exchange of any new valuation data was August 22, 1986. The trial date was subsequently continued to October 21, 1986, by stipulation.

Appellants filed their new statement of valuation data on September 5, 1986, designating, among others, the same three appraisal experts as before. In addition, appellants stated that three of the individual property owners "may testify as to their opinion of value: . . . namely, that they have suffered a loss in value and/or damages as a result of the condemnation in an amount at least as great as set forth in [the statements of valuation submitted by Clevenger, Johnson and Doster], based on the information set forth therein and their common and particular knowledge as owners in the Concord Shopping Center." Appellants' revised valuation evidence focused on calculating the projected loss to a single dominant tenement within the Concord Center attributable to its owner's inability to build a hypothetical new highrise development on the dominant tenement, allegedly resulting from the Agency's taking of the parking easements at issue here.

The Agency again filed a motion *in limine* to exclude virtually all of appellants' proposed evidence. After extensive hearings on the *in limine* motion, the trial court granted the motion on November 3, 1986, effectively ruling that the expert testimony theretofore submitted by appellants was inadmissible. Appellants requested and were granted two short continuances to confer and to consider their options. At a status hearing on December 2, 1986, appellants sought a 90-day continuance in order to allow new attorneys and new experts to review the matter to produce new valuation evidence. The trial court denied appellants permission to file an entirely new valuation statement leading to a new *in limine* hearing, on the grounds that appellants had already had ample opportunity to submit evidence in compliance with previous *in limine* motions and the appellate opinion in *Tobriner I*. The trial court pointed out that lengthy and extensive *in limine*

hearings had already been had on the issues raised by appellants' proffered evidence; it stated its opinion that "they have had their day in court," and it was time to proceed to trial.

Nevertheless, due to the congested state of its own calendar, the trial court did continue further trial in the case until April 6, 1987. The court ruled that once appellants' own *in limine* motion to exclude the Agency's appraisal evidence was heard at that time, the matter would proceed immediately to trial; and it specifically ordered that "no party shall hereafter designate any additional experts, exchange any valuation data, or undertake any discovery during the period until trial resumes, and no additional expert testimony will be allowed before the jury other than that which has already been disclosed and evaluated" during the *in limine* process in April and October 1986.[3]

On May 1, 1987, appellants moved for permission to use the testimony of the property owners themselves in lieu of the expert testimony on which appellants had previously relied. In addition, appellants filed offers of proof on behalf of the appraisal experts who had testified in the previous *in limine* hearings and whose testimony had already been barred. These offers of proof simply repeated the experts' earlier evaluation theories. In the offers of proof with respect to the owners' testimony, it was represented that all of the owners would testify that the value of their property had diminished; nevertheless, only one owner (Mr. David Highiet) offered to testify regarding his estimate of the decrease in the value of his dominant tenement.[4]

On May 4, 1987, the trial court rejected the appellants' offers of proof, refused to change its prior rulings, and denied appellants' request for a further continuance to allow production of new evidence. Appellants thereupon stipulated to the trial court's determination of the valuation issues based on the testimony of the Agency's expert, without waiving their right to demand a jury trial if successful on appeal. Trial went forward without a jury, and the court entered judgment finding that none of the dominant tenements owned by the appellant owners had suffered any diminution in value as a result of the taking. This appeal followed.

## II

Appellants' initial contention is that they were denied due process by the trial court's refusal to give them another opportunity to develop and

---

[3] Appellants thereupon sought a writ of mandate in this court to compel the trial court to give them another opportunity to present new evaluation evidence. This court denied the writ on March 24, 1987. (A037890 [nonpub. opn.].)

[4] Highiet offered to testify that he considered his dominant estate to have declined $300,000 in value from before the condemnation to after.

offer in evidence alternative theories of valuation. In support of their argument, they rely on four factual circumstances of this case: (1) the fact that the trial was continued for four months following the ruling on December 2, 1986, barring appellants' valuation evidence; (2) the trial court's statement at the *in limine* hearing on November 3, 1986, that it could "think of other methods" of valuating the property in question; (3) the trial court's statement at the *in limine* hearing on April 10, 1986, that it "would be appropriate" for appellants to offer evidence of the effects of the condemnation on the potential development of one particular dominant tenement; and (4) the trial court's deferral until April 1987 of the hearing on appellants' *in limine* motion with regard to the Agency's expert, Mr. Richard Betts. In response, the respondent Agency argues that appellants cannot complain of a denial of due process because they were given numerous opportunities over the course of an eight-year period to present appraisal evidence in compliance with applicable law and this court's opinion in *Tobriner I*. We agree with respondent.

■ The right not to be deprived of life, liberty or property without due process of law is, of course, a fundamental constitutional right guaranteed both by the Fourteenth Amendment of the United States Constitution and by article I, section 7, subdivision (a) of the California Constitution. The mandate of due process is that a person must be afforded reasonable notice and an opportunity to be heard prior to the deprivation of a significant liberty or property interest. (*In re Watson* (1979) 91 Cal.App.3d 455, 460-461 [154 Cal.Rptr. 151]; *In re Anderson* (1977) 73 Cal.App.3d 38, 45 [140 Cal.Rptr. 546].) "The essentials of due process of law are a regular and orderly procedure in a court of competent jurisdiction [citations] before an impartial judge [citations]; the defendant must have notice and an opportunity to be heard [citations]; and the hearing must be fair [citation]." (*State of Cal.* ex rel. *Dept. of Water Resources* v. *Natomas Co.* (1966) 239 Cal.App.2d 547, 558 [49 Cal.Rptr. 64].) " ' "While no exact definition of due process may be formulated, it is established that due process is absent if a party is denied the right to have his cause tried and determined in accordance with the procedures that are applied in other cases of like character. [Citations.] It implies the right not to be deprived of one's property or liberty without evidence having been offered against him in accordance with the established rules, and an opportunity to cross-examine those whose evidence is given against him, and the opportunity to present evidence in his own behalf. [Citations.]" ' [Citation.]" (*In re Watson, supra,* 91 Cal.App.3d at p. 461.)

The United States Supreme Court has stated that "the Due Process Clause grants the aggrieved party the opportunity to present his case and have its merits fairly judged. Thus it has become a truism that '*some* form of

hearing' is required before the owner is finally deprived of a protected property interest. [Citation.] . . . [¶] Obviously, nothing we have said entitles every civil litigant to a hearing on the merits in every case. The State may erect reasonable procedural requirements for triggering the right to an adjudication . . . . [Citations.] And the State certainly accords *due* process when it terminates a claim for failure to comply with a reasonable procedural or evidentiary rule. [Citations.] What the Fourteenth Amendment does require, however, 'is "an *opportunity* . . . granted at a meaningful time and in a meaningful manner," [citation], "for [a] hearing appropriate to the nature of the case," [citation].' [Citation.]" (*Logan* v. *Zimmerman Brush Co.* (1982) 455 U.S. 422, 433, 437 [71 L.Ed.2d 265, 276, 279, 102 S.Ct. 1148], italics by the court.)

■ There is no question that in this case, appellants had sufficient opportunity to present evidence in their own behalf. The proceedings herein followed established rules and procedures, and were fair and impartial. Appellants were fully heard. The fact that appellants were precluded from offering new valuation evidence after the second *in limine* hearing did not constitute a denial of due process; the procedural and evidentiary rules and requirements with which they failed to comply were reasonable and well-established, and they had more than ample opportunity over the course of eight years to present valuation evidence that would have been admissible under *Tobriner I*. Indeed, they had no fewer than *four* such opportunities: at the outset of the first trial; after the *in limine* rulings at the first trial; after the decision in *Tobriner I* and the commencement of the second trial; and after the first *in limine* hearing at the second trial, in April 1986. The fact that they were not given yet another opportunity to offer admissible evidence after the second *in limine* hearing was not a denial of their due process rights.

The trial court was correct in stating that to continuously grant repeated opportunities to develop new valuation evidence would result in unnecessary and burdensome delays. The trial court is responsible to protect the due process rights of *both* parties: not only the condemnee, but the condemnor as well. Consideration of the appellants' right to present evidence must be balanced by a proper consideration for the rights of the respondent. ■ "A plaintiff who diligently prosecutes his suit is entitled to have a trial within a reasonable time, and the policy that there shall be a disposition of causes on their merits is not served when a party who is without fault is denied a determination of his cause through repeated continuances granted to the opposing party. At some point it must be ruled that the case shall without fail be tried on a day certain." (*Hansen* v. *Bernstein* (1952) 110 Cal.App.2d 170, 173 [242 P.2d 368].)

■ It is simply not a denial of due process for a trial court to cut off a litigant's opportunity to present evidence, or to dismiss an action when the party has failed to comply with established procedural or evidentiary rules. The fact that appellants' claim to compensation is founded on the due process clause of the federal and state Constitutions does not excuse their lack of compliance with the required appraisal methods of valuation and proof. (*City of San Jose* v. *Superior Court* (1974) 12 Cal.3d 447, 454-455 [115 Cal.Rptr. 797, 525 P.2d 701, 76 A.L.R.3d 1223]; *Powers Farms* v. *Consolidated Irr. Dist.* (1941) 19 Cal.2d 123, 126, 130-131 [119 P.2d 717]; *Bleamaster* v. *County of Los Angeles* (1961) 189 Cal.App.2d 274, 279-280 [11 Cal.Rptr. 214]; *Hansen* v. *Bernstein, supra,* 110 Cal.App.2d at pp. 172-174; *G-K Properties* v. *Redevelopment Agency, etc.* (9th Cir. 1978) 577 F.2d 645, 647-648 [Kennedy, J.]; *Shannon* v. *Crowley* (N.D.Cal. 1981) 538 F.Supp. 476, 478-484.)

Appellants' factual contentions in support of its position on this issue are meritless. Contrary to appellants' statements in their briefs, the trial court did not state or imply anything that could reasonably have misled appellants into pursuing and developing a faulty line of valuation evidence. To the contrary, the trial court specifically and repeatedly stated to appellants that it could not and would not give advice on how to present their valuation evidence. At the close of the April 1986 *in limine* hearing, the court warned appellants that the evidence they then proposed to develop "sounds highly speculative." Although the court did state that it "would be appropriate" to offer the evidence suggested by appellants' counsel at that time, it expressly warned that it "would have to see the context and understand more of the context" of that proposed evidence before it could give appellants "a definitive answer" as to its admissibility. There are simply no grounds for appellants to complain of the trial court's directives.

In short, we find no abuse of the trial court's discretion in its refusal to permit appellants to develop new appraisal evidence after they had already had numerous opportunities to do so over the course of this very prolonged litigation. ■■■■ There was no denial of appellants' rights; they received all the process due them.[5]

---

[5] Appellants urge that the trial court's *in limine* rulings usurped the jury's function and denied the owners' constitutional rights to a jury trial. We disagree. Courts routinely conduct hearings *in limine* to determine the scope of admissible evidence. (*Coachella Valley Water Dist.* v. *Western Allied Properties, Inc.* (1987) 190 Cal.App.3d 969, 976, fn. 3 [235 Cal.Rptr. 725]; *People* ex rel. *Dept. Pub. Wks.* v. *Peninsula Enterprises, Inc.* (1979) 91 Cal.App.3d 332, 340 [153 Cal.Rptr. 895].) A court may exclude incompetent evidence or evidence not relevant to the valuation questions presented to the jury. (*City of Ontario* v. *Kelber* (1972) 24 Cal.App.3d 959 [101 Cal.Rptr. 428]; cf. *People* ex. rel. *Dept. Pub. Wks.* v. *L. A. County Flood etc. Dist.* (1967) 254 Cal.App.2d 470, 477 [62 Cal.Rptr. 287]; 5 Nichols on Eminent Domain (1985 ed.) Evidence, § 18.11.) As discussed *post,* the trial court here properly employed the *in*

## III

Appellants' central argument is that the trial court erred in excluding their proffered valuation evidence and, in so doing, violated the federal and state constitutional guaranties of just compensation by sanctioning the "confiscation" of the property at issue.[6] We disagree with appellants.

### A.

In the first instance, the constitutional principle at issue is based on the "basic premise that just compensation is measured by the damage to the condemnee—what the property owner has lost—rather than the benefit to the condemner. [Citations.] 'The principle sought to be achieved by the concept of just compensation is to reimburse the owner for the property interest taken and to place the owner in as good a position pecuniarily as if the property had not been taken.' [Citation.]" (*Redevelopment Agency* v. *Contra Costa Theatre, Inc.* (1982) 135 Cal.App.3d 73, 83 [185 Cal.Rptr. 159].) "The guiding principle of just compensation is reimbursement to the owner for the property interest taken. 'He is entitled to be put in as good a position pecuniarily as if his property had not been taken. He must be made whole but is not entitled to more.' [Citation.]" (*U.S.* v. *Virginia Electric Co.* (1961) 365 U.S. 624, 633 [5 L.Ed.2d 838, 847, 81 S.Ct. 784].) In other words, the condemnee is entitled to be reimbursed for the actual value of what he or she has lost—no more and no less.

The corollary to this principle is that there is no constitutional guarantee that the owner of a condemned property interest will necessarily receive something. If the property interest taken by the government has *no value,* then *nothing* need be given to the condemnee to put him or her in as good a position pecuniarily as if the property had not been taken. (*Southern Cal. Edison Co.* v. *Bourgerie* (1973) 9 Cal.3d 169, 174 [107 Cal.Rptr. 76, 507 P.2d 964]; *Harman* v. *City and County of San Francisco* (1972) 7 Cal.3d

---

*limine* procedure to determine the scope of admissible evidence in light of this court's opinion in *Tobriner I,* and correctly excluded testimony and evidence which, after lengthy hearings and full cross-examination, it determined was not in compliance with the law of the case or the applicable principles of eminent domain valuation. There was no denial of appellants' constitutional rights in this respect.

[6]The Fifth Amendment of the Constitution of the United States provides in pertinent part that "[n]o person shall . . . be deprived of life, liberty, or property, without due process of law; nor shall private property be taken for public use, without just compensation."

Article I, section 19, of the California Constitution states: "Private property may be taken or damaged for public use only when just compensation, ascertained by a jury unless waived, has first been paid to, or into court for, the owner. The Legislature may provide for possession by the condemnor following commencement of eminent domain proceedings upon deposit in court and prompt release to the owner of money determined by the court to be the probable amount of just compensation."

150, 167-168 [101 Cal.Rptr. 880 [496 P.2d 1248]; *People* v. *Al. G. Smith Co. Ltd.* (1948) 86 Cal.App.2d 308, 311 [194 P.2d 750]; *Bohm* v. *Metropolitan El. Ry. Co.* (1892) 129 N.Y. 576 [29 N.E. 802]; 27 Am.Jur.2d, *supra, Eminent Domain,* § *322, fn. 11, pp. 145-146; Rest., Property,* § *508, coms. b, c, illus. 2.)*

■ Where the property interest taken is an easement appurtenant to a dominant estate, the amount of reimbursement to which the condemnee is entitled is determined by the diminution, *if any,* in the value of the dominant estate to which the easement is appurtenant, caused by the loss of the easement. (*Harman* v. *City and County of San Francisco, supra,* 7 Cal.3d at p. 167; *Hemmerling* v. *Tomlev, Inc.* (1967) 67 Cal.2d 572, 575 [63 Cal.Rptr. 1, 432 P.2d 697]; *Tobriner I, supra,* 153 Cal.App.3d at p. 372; *People* ex rel. *Dept. of Public Works* v. *Logan* (1961) 198 Cal.App.2d 581, 586-587 [17 Cal.Rptr. 674]; 4 Nichols on Eminent Domain (1989 ed.) Market Value— Quality of Res, § 12.04[1]; 27 Am.Jur.2d, *supra,* Eminent Domain, § 322, p. 145; 14 Dankert, Cal. Real Estate Law & Practice, Condemnation Practice Handbook (1989) § 512.65 [hereafter Dankert]; Condemnation Practice in California (Cont.Ed.Bar 1973) § 10.9, p. 265.) Where the easement is critical to the value of the dominant tenement, the damages arising from the condemnation and loss of the easement will be high, even if the value of the land over which the easement lies (the servient tenement) is relatively low. On the other hand, if the easement taken is not needed by the dominant tenement, the damages from the loss of the easement will be small or nonexistent, even if the value of the servient tenement is quite high. (Rest., Property, *supra,* § 508, coms. b, c.)[7]

---

[7] Section 508 of the Restatement of Property states: "Upon the extinguishment of an easement by eminent domain, the owner of the easement is entitled to compensation measured by the value of the easement." The comments and illustrations to this section are highly pertinent to the instant case: "b. *Rationale.* . . . The strict legal effect of condemnation is the destruction of property interests with the creation in the condemning unit of new interests in place of those extinguished. If eminent domain proceedings are directed toward Blackacre, owned by A, but subject to an easement owned by B, and the taking is such that . . . the easement is extinguished, property interests both of A and B are destroyed, and each is entitled to just compensation for his interest. If the complete totality of possible property interests in Blackacre were united in A, he alone would be entitled to compensation, and its measure would be the fair value of such totality of interests. From this it might seem to follow that the measure of B's compensation should be the difference between the fair value of Blackacre unburdened by the easement and its value as subject to such easement. As a practical matter, however, this would often amount to a denial of just compensation to the easement owner. *Between the economic value of the easement to its owner and the effect of the easement by way of reduction in the value of the servient land there is commonly little, if any, relation, however true it may be in an analytical sense that the interest in the servient land represented by the easement is the exact equivalent of the interest subtracted from the totality of ownership in that land by the creation of the easement. Fair value for purposes of the award is the loss to the owner of the easement, not the gain on the other side by its extinguishment.*

Thus, for example, where an easement of access is taken which is vital to the use, enjoyment and economic value of the dominant estate to which it is appurtenant, the loss in market value of the dominant tenement and the consequent monetary damages awarded to the condemnee will be high. On the other hand, if the same dominant tenement obtains another means of access, as where an adjoining public thoroughfare is built, and the old easement becomes unnecessary for access to the dominant tenement and falls into disuse, the condemnation of that easement will result in little or no diminution in value to the dominant estate, even if the land over which the old easement of access passes is quite valuable. (Rest., Property, *supra,* § 508, illus. 1, 2.)

For this reason, the courts have repeatedly reiterated that just compensation is measured by the damage, if any, to the condemnee, rather than the benefit to the condemnor. (*Redevelopment Agency* v. *Contra Costa Theatre, Inc., supra,* 135 Cal.App.3d at p. 83; *People* ex. rel. *Dept. of Transportation* v. *Southern Pac. Transportation Co.* (1978) 84 Cal.App.3d 315, 324 [148 Cal.Rptr. 535]; Rest., Property, *supra,* § 508, coms. b, c.) Only the change in the value of the condemnee's property is relevant, not the effect of the condemnation on the value of the property taken. If the owner of a condemned appurtenant easement suffers no diminution in the value of his or her dominant tenement from the loss of the easement, the pecuniary damages to be awarded the condemnee must be negligible, no matter how much the removal of the easement affects the value of the servient estate over which it lies.

---

"c. *Value—Appurtenant easement.* Appurtenant easements, being usable only in connection with the use and enjoyment of a dominant tenement, have value only in connection with that tenement. Their value, then, for the purpose of measuring awards of compensation in eminent domain proceedings ordinarily is the reduction in market value of the dominant tenement with its appurtenant easements caused by the condemnation proceedings. *Thus the extinguishment of an easement without which the dominant land would be of little, if any, use would call for a much higher award than would the extinguishment of one of merely slight convenience.* In the unusual case of a dominant tenement without a provable market value, the value of the extinguished easement is determined by the same sort of proof by which the value of that land would be determined if it were the object of the condemnation.

"*Illustrations:*

"1. Blackacre, owned by A but subject to an easement appurtenant to Whiteacre, owned by B, is condemned. The market value of Whiteacre with the benefit of the easement is $10,000. Without such benefit its market value is $8,000. B is entitled to an award of $2,000. It is of no consequence that Blackacre's market value free of the easement is only $500 more than it is when subject to the easement.

"2. Blackacre, owned by A but subject to an easement appurtenant to Whiteacre, owned by B, is condemned for use as a public way. The market value of Whiteacre is unaffected by the destruction of the easement since the public way establish[ed] by the condemnation is fully as serviceable for Whiteacre as was the private way, the easement extinguished by the condemnation. *B is entitled to no award despite the fact that the market value of Blackacre free of the easement would be $1000 higher than it is when subject to the easement.*" (Italics added.)

██ Thus, the fact that appellants received no compensation for the condemnation of the easements does not in itself constitute a violation of either the Fifth Amendment or article I, section 19 of the California Constitution.

## B.

The measure of compensation for property taken in eminent domain is the fair market value of the property taken. (Code Civ. Proc., § 1263.310.)[8] ██ Appellants contend that the property under consideration is not susceptible of evaluation by the standard measures of fair market value because there is no relevant market for it; therefore, they urge that its value for compensation purposes may be determined "by any method of valuation that is just and equitable." (Code Civ. Proc., § 1263.320, subd. (b); Evid. Code, § 823.) Implicit in appellants' argument on this point is the contention that the trial court's approach to the evaluation evidence in this case was too rigid and technical. Making essentially the same argument which they made in their previous appeal, appellants contend that their valuation evidence should have been admitted even if it violated the established rules for valuation of easements reiterated by this court in *Tobriner I*.[9]

---

[8] Fair market value is defined as "the highest price on the date of valuation that would be agreed to by a seller, being willing to sell but under no particular or urgent necessity for so doing, nor obliged to sell, and a buyer, being ready, willing, and able to buy but under no particular necessity for so doing, each dealing with the other with full knowledge of all the uses and purposes for which the property is reasonably adaptable and available." (Code Civ. Proc., § 1263.320, subd. (a).)

[9] Appellants thus persist in their frontal attack on the rule reiterated by this court in *Tobriner I* regarding the evaluation of condemned appurtenant easements through the measurement of the value of the domainant tenement before and after the taking. In argument before the trial court on May 4, 1987, appellants' counsel attacked this approach as leading to "unconstitutional takings and unconstitutional compensation, mumbo jumbo calculations, some alchemistic ritual, medieval calculation that doesn't bear a wit [*sic*] of sense in relation to actual value." Appellants' counsel asked the trial court to "consider the constitutional dimensions of what is happening here. Rather than the incantations of *Hemmerling* v. *Tomlev* [*supra*, 67 Cal.2d 572.]" Appellants continue to attack the principle of *Hemmerling* v. *Tomlev* and *Tobriner I* in their opening brief. However, as in the earlier appeal they cite absolutely no contrary authority.

The reason is clear enough: there is none. The rule we enunciated in *Tobriner I* is too well established and too reasonable to be overturned simply because one condemnee finds it inconvenient. Appurtenant easements have no use or value apart from the dominant tenements the easements were created to serve; there can be no market for such easements apart from the dominant tenement. Appellants would have us adopt an approach under which the value of an easement could be measured by the hypothetical development potential of the servient estate over which the easement lies. Adoption of this approach would result in standing the eminent domain process on its head by granting condemnees windfall awards representing the value of the benefit to be gained by the condemning agency from removal of the easement, rather than the actual value of the easement to the dominant tenement to which the easement

The rule stated in section 1263.320, subdivision (b) of the Code of Civil Procedure and in Evidence Code section 823 is aimed at the evaluation of "special purpose properties" such as schools, churches, cemeteries, parks, and utilities for which there is little or no market. (See legis. committee com., 19A West's Ann. Code Civ. Proc. (1982 ed.) § 1263.320, p. 39 [Deering's Ann. Code Civ. Proc. (1981) § 1263.320, p. 268]; 1 Witkin, Cal. Evidence (3d ed. 1986) The Opinion Rule, § 538, pp. 509-510.) The property to be evaluated here is not such a special use property. Although the property being condemned here consists entirely of parking easements, it is not the fair market value of the easements themselves which must be determined. Rather, the way in which a value is given to the easements is by determining the fair market value before and after the taking of the dominant estates to which the easements were appurtenant. The value of each condemned easement equals the decrease in value of each dominant estate.

Appellants have not provided any evidence that there is "no relevant market" in these dominant tenements held in fee by the appellant owners. Sales and leases of properties in the Concord Center have apparently taken place on a regular basis both before and after the date of valuation. It was these sales and leases which were used by the Agency's appraiser in his evaluation of the value of the dominant tenements. Appellants' contention that the fair market value standard is meaningless with regard to the property in this case is completely meritless. The trial court did not err in adhering closely to the established standard for evaluating appurtenant easements.

C.-F., IV*

. . . . . . . . . . . . . . . . . . . .

The judgment is affirmed.

Barry-Deal, J., and Merrill, J., concurred.

Appellants' petition for review by the Supreme Court was denied January 17, 1990. Mosk, J., did not participate therein.

---

is appurtenant. For this reason, this approach has always been strictly rejected by the courts. (*Merced Irrigation Dist.* v. *Woolstenhulme* (1971) 4 Cal.3d 478, 490-491 [93 Cal.Rptr. 833, 483 P.2d 1]; *People* ex. rel. *Dept. of Water Resources* v. *Andresen* (1987) 193 Cal.App.3d 1144, 1156-1157 [238 Cal.Rptr. 826]; *Redevelopment Agency* v. *Contra Costa Theatre, Inc., supra,* 135 Cal.App.3d at p. 83; *Yuba County Water Agency* v. *Ingersoll* (1975) 45 Cal.App.3d 452, 455 [119 Cal.Rptr. 444]; *People* ex. rel. *Dept. Pub. Wks.* v. *L. A. County Flood etc. Dist., supra,* 254 Cal.App.2d at pp. 477-478; Rest., Property, *supra,* § 508, coms. b, c.)
   * See footnote, *ante,* page 1087.