Filed 5/20/25  Zubrick v. Akhtar CA2/7

**NO/T TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SEVEN

| | |
|---|---|
| STUART LEE ZUBRICK, | B329182 |
| Plaintiff and Respondent, | (Los Angeles County Super. Ct. No. BC651071) |
| v. | |
| SAHIBZADA AASIM AKHTAR, | |
| Defendant and Appellant. | |

APPEAL from a judgment of the Superior Court of Los Angeles County, Holly J. Fujie, Judge.  Affirmed.

Buxbaum Chakmak & Wynder, Charlene J. Wynder and Neil J. Kantor for Defendant and Appellant.

David Fu & Associates, David D. Fu and Vigen Stepanyan for Plaintiff and Respondent.

_____

Sahibzada Aasim Akhtar appeals from a judgment following a bench trial in favor of plaintiff Stuart Lee Zubrick. The trial court quieted title to two properties in Zubrick's favor, concluding Akhtar had forged and fraudulently recorded documents purporting to transfer those properties to himself.

Akhtar contends the trial court should have dismissed the case because the trial did not begin within five years as required by Code of Civil Procedure[1] section 583.310. He also argues the court erred by failing to grant him relief under section 473 and by denying his request for a trial continuance based on his attorney's withdrawal on the second day of trial. We affirm.

## FACTUAL AND PROCEDURAL BACKGROUND

A. *Akhtar Records a Grant Deed To Transfer Zubrick's Properties to Himself*

In 2005, Zubrick created the Stuart Lee Zubrick Revocable Trust, which included two parcels of property in Los Angeles (collectively, the Properties). City of Hope Hospital was the sole beneficiary of the trust. In 2013, Zubrick amended the trust to name Akhtar as the successor trustee in the event of Zubrick's death or incapacity. He appointed Akhtar as successor trustee because most of his other friends were elderly or in poor health, and Akhtar was his youngest friend.

In January 2017, Zubrick discovered that Akhtar, relying on a document titled the 2015 Amendment in Toto to Declaration of the 2005 Stuart Lee Zubrick Revocable Trust (the Amendment), had recorded certifications of trust for the

---

[1] Undesignated statutory references are to the Code of Civil Procedure.

2

Properties, declared himself trustee, and tried to sell them. Akhtar also recorded a grant deed purporting to transfer both Properties to himself (the Grant Deed). Although the Grant Deed bore a signature resembling Zubrick's, Zubrick denied ever signing it and said it was forged.

B.    *Pretrial Proceedings*

On February 17, 2017, Zubrick initiated this action, filing a verified complaint for quiet title to the Properties. Akhtar first appeared in April 2017, represented by counsel Robert Woodbury.

In July 2017, Zubrick requested an injunction preventing Akhtar from attempting to "encumber, sell, dispose of or in any way impair" the Properties. In opposing Zubrick's request, Akhtar relied on a purported contract from 2011 (the 2011 Agreement). The 2011 Agreement, allegedly signed by Zubrick, Akhtar, and psychiatrist Dr. Herbert Marshak, stated that proceeds from certain medical business accounts would be divided among them — 40 percent to Zubrick and Marshak each and 10 percent to Akhtar.[2] The 2011 Agreement stated the parties expected the proceeds to exceed $50 million. According to Akhtar, instead of paying him the $5 million he was owed under the 2011 Agreement, Zubrick agreed to transfer the Properties to him. In September 2017, the court granted Zubrick's request for a preliminary injunction.

In October 2017, Akhtar cross-complained against Zubrick, Marshak, and the three medical businesses named in the 2011 Agreement, alleging breach of contract and related claims. In

---

[2]    We note the amounts in the 2011 Agreement total only 90 percent.

3

January 2018, Vip Bhola substituted in as Akhtar's new counsel for both the main and the cross-action. Zubrick successfully moved to strike all the cross-claims against him under section 425.16. The remaining defendants on the cross-complaint prevailed on their motion for judgment on the pleadings as to the bulk of Akhtar's claims, leaving two causes of action for breach of contract and violation of Business and Professions Code section 17200. The facts underlying those two causes of action in the cross-complaint were "identical to those underlying the quiet title claims" in Zubrick's operative complaint against Akhtar.

In June 2021, Bhola was relieved as Akhtar's counsel, and Akhtar began representing himself. While self-represented, Akhtar filed ex parte applications to continue the trial date as well as other motions. The trial date was continued several times until April 2022, when Akhtar sought to again continue the May 3, 2022 trial date to allow his newly retained counsel time to prepare. Zubrick opposed the request, arguing Akhtar's previous attorney had substituted out nearly a year earlier and discovery had closed in November 2019. The court denied Akhtar's request for a continuance.

On May 3, 2022, the day the trial was scheduled to begin, Akhtar filed for bankruptcy, resulting in an automatic stay of Zubrick's case. The same day, Akhtar filed a substitution of attorney form purporting to have attorney Neil J. Kantor exit and Akhtar resume representing himself. However, while Kantor had filed documents on Akhtar's behalf, he had never officially substituted in as counsel. In July 2022, the bankruptcy court granted Zubrick's motion to lift the bankruptcy stay. The superior court set trial for September 2, 2022. The notice of ruling for that hearing indicates "[t]he Court also observed that

4

the 5-year deadline to bring this matter to trial was extended from August 15, 2022, to late October 2022.  Defendant Akhtar's and Cross-Complainants' counsel agreed to stipulate to extend the 5-year deadline."

At the end of July 2022, the court granted Akhtar's request to substitute in new counsel, Christian Contreras, for Zubrick's claims against Akhtar, but not for Akhtar's cross-complaint.  In mid-August 2022, Akhtar sought another trial continuance to permit his new counsel time to prepare.  Akhtar's ex parte application indicated "Defendants stipulate to waive the Five Year Rule but even then, a trial in early October will not violate the Five Year Rule."  Over Zubrick's opposition, the court granted the continuance, resetting trial for October 10, 2022.  The court subsequently continued the trial date for one more day to October 11, 2022.

In late August 2022, the court granted Akhtar's request to substitute in Patricia Rodriguez as counsel to defend him against Zubrick's claims, but Akhtar continued to represent himself on the cross-complaint.  In total, Akhtar was self-represented as a defendant for over a year—from June 2021 until July 2022—and was self-represented on his cross-complaint from June 2021 onward.

C.    *The Trial*

The court conducted a bench trial on Zubrick's complaint against Akhtar[3] beginning October 11, 2022.  Before trial, the parties agreed to submit direct testimony via declarations.

---

[3]    Akhtar's cross-claims against Marshak and another defendant were bifurcated for a jury trial.

5

Zubrick submitted declarations from: (1) a handwriting expert, who opined the signatures on the 2011 Agreement, the Grant Deed, and the Amendment were copied and pasted from another document; (2) Marshak, who asserted the 2011 Agreement was "fake and false" and neither he nor Zubrick had signed it; and (3) a notary public, who stated he had not notarized the Amendment, despite being listed as the notary on the document. Akhtar submitted his own declaration and one from a handwriting expert, who opined that Zubrick's signature was genuine.

On the first day of trial, Zubrick's counsel cross-examined Akhtar about several emails produced in discovery that appeared to have been altered and multiple documents related to the alleged grant of the Properties, all of which (suspiciously) contained identical copies of Zubrick's signature.

At the outset of the second day of trial, October 12, Akhtar's counsel, Rodriguez, moved to withdraw under the California Rules of Professional Conduct, rule 1.16, citing concerns that Akhtar's defense "lacks probable cause or is for a harassing or malicious purpose."[4] Rodriguez stated, "I am hesitant to disclose communications with my client. I have asked my client to substitute me out based on what I believe is a

---

[4]     Rule 1.16(a)(1) of the Rules of Professional Conduct provides: "a lawyer shall not represent a client or, where representation has commenced, shall withdraw from the representation of a client if: (1) the lawyer knows or reasonably should know that the client is bringing an action, conducting a defense, asserting a position in litigation, or taking an appeal, without probable cause and for the purpose of harassing or maliciously injuring any person." (Footnotes omitted.)

conflict. That has been refused. I have grave concerns about presenting a defense in this case based on all of the evidence I have seen and the veracity of the defense." Rodriguez further stated she did not represent Akhtar on his cross-complaint, "so he does already represent himself on that." Rodriguez further indicated her communication with Akhtar had completely broken down and Akhtar did not want to sit next to her that morning in the courtroom.

Rodriguez and Zubrick's counsel advised the court there was an "emergency situation" requiring that testimony be taken immediately from a witness for Zubrick whose mother (who lived in Israel) had just had a brain aneurysm; the witness needed to fly to Israel to join her. When the court asked if Rodriguez could continue to represent Akhtar just for the purpose of cross-examining that one witness so he could then leave, Rodriguez indicated she could not ethically present a defense on behalf of Akhtar.

Zubrick's counsel indicated Zubrick would be severely prejudiced by any further delay in the trial, as a pressing property tax issue hinged on the outcome of the trial and Zubrick was in danger of defaulting on a loan as a result. When the court expressed an inclination to have Akhtar proceed pro se, Akhtar contended he could not do so and had previously filed for bankruptcy to delay the trial and give him time to locate counsel.

The court granted Rodriguez's motion to withdraw. The court gave Akhtar two days—until October 14—to find new counsel or proceed pro se. The witness with the ill mother said he could postpone his departure until after he testified on October 14.

On October 13, Akhtar sought a writ of mandate, pro se, in

7

this court challenging the trial court's denial of his oral request for a continuance. This court summarily denied the petition.

When trial reconvened on Friday, October 14, Akhtar made an oral request to continue the trial "for a few days" so he could "review th[e] paperwork and get ready for the trial." The trial court denied the request, noting Akhtar had not availed himself of the opportunity to pick up the case file that Rodriguez had made available for him. Rodriguez had brought the files to court to turn them over to Akhtar because he had failed to pick them up. Later in the day, Akhtar again asked, "We cannot even continue the trial to Tuesday or Wednesday so that I can prepare for this trial?," and the court responded, "We have already discussed that."

The bench trial continued for the morning session. Zubrick called several witnesses for additional direct testimony, including the notary, an individual who facilitated the purchase of the account receivable described in the 2011 Agreement, Zubrick's handwriting expert, and Zubrick's former employee who met with both Zubrick and Akhtar the day the two allegedly went to a notary public. Akhtar cross-examined Zubrick's witnesses. The court recessed at noon due to Akhtar's request for accommodation for religious services.

The following Monday, Akhtar continued his cross-examinations of Zubrick's witnesses and called several additional witnesses, including Marshak and another of Zubrick's former employees who oversaw the receipt of rental checks for the Properties. After Zubrick provided testimony on direct examination, Akhtar cross-examined him at length as well.

Pursuant to their stipulation, the parties submitted closing briefs instead of oral arguments, with Zubrick filing his brief on

November 28. The court ordered Akhtar to file his closing brief by December 30 but then extended his time to file it until January 19, 2023; Akhtar ultimately filed it on January 23. The court considered Akhtar's brief despite its untimeliness.

D. *The Statement of Decision*

In February 2023, the court issued a statement of decision. The court determined by clear and convincing evidence that the 2011 Agreement, the Grant Deed, the Amendment, and emails produced by Akhtar were forged and fraudulent. Similarly, Akhtar's "testimony was generally contradictory, inconsistent and unsupported by other reliable and admitted testimony and exhibits." The court concluded Zubrick had always owned the Properties and was entitled to judgment of quiet title.

Over five pages in the statement of decision, the court outlined the history of Akhtar's representation by counsel and self-representation. The court explained it allowed Rodriguez to withdraw because it appeared that she "could not continue without violating her ethical obligations as an attorney," and because Akhtar had been self-represented on the cross-complaint since June 2021. The court noted Akhtar did not contradict Rodriguez's statements about their relationship or her inability to ethically continue as his counsel. The court also noted Akhtar's objections to the trial " 'going on for six years.' " The court concluded, "In light of [Akhtar's] self-representation in the [cross-complaint] and his desire to conclude trial on this over-five-year-old case, where the [cross-complaint] involved the same factual and essentially the same legal issues as [Zubrick's complaint], the Court gave [Akhtar] sufficient time to obtain Ms. Rodriguez' files and prepare his case, and proceeded with the

9

trial."

In April 2023, the court entered judgment in favor of
Zubrick. Akhtar timely appealed.

## DISCUSSION

A. *Standard of Review*

We review a trial court's findings of fact set forth in a
statement of decision for substantial evidence. (*Symons
Emergency Specialties v. City of Riverside* (2024) 99 Cal.App.5th
583, 596.) "Generally, 'our review begins and ends with the
determination as to whether, on the entire record, there is
substantial evidence, contradicted or uncontradicted, which will
support the trial court's factual determinations.' " (*Ibid*.) We
independently review the trial court's rulings on questions of law.
(*Aryeh v. Canon Business Solutions, Inc.* (2013) 55 Cal.4th 1185,
1191.)

" ' "A judgment or order of a lower court is presumed to be
correct on appeal, and all intendments and presumptions are
indulged in favor of its correctness." ' " (*Association for Los
Angeles Deputy Sheriffs v. County of Los Angeles* (2023)
94 Cal.App.5th 764, 776-777.) The appellant carries "the burden
to prove otherwise by presenting legal authority on each point
made and factual analysis, supported by appropriate citations to
the material facts in the record." (*Keyes v. Bowen* (2010)
189 Cal.App.4th 647, 655-656.)

B. *Akhtar Forfeited His Arguments on Appeal by Failing To
Abide by Appellate Rules*

Akhtar's appellate briefs fail to comply with rule 8.204 of

10

the California Rules of Court.[5]  For instance, Akhtar's discussion of the factual and procedural history of the case does not include any citations to the record.  (See Rule 8.204(a)(1)(C) [briefs must support any reference to a matter in the record by a citation to volume and page number].)  And in the Discussion section he cites not to the designated clerk's and reporter's transcripts but instead to incomplete snippets of the reporter's transcripts attached to his brief, in violation of both rule 8.204(a)(1)(C) and rule 8.204(d), which provides that a party may attach to its brief no more than 10 pages of material, and only material that is not "readily accessible."  " 'It is the duty of counsel to refer the reviewing court to the portion of the record which supports appellant's contentions on appeal.  [Citation.]  If no citation "is furnished on a particular point, the court may treat it as waived." ' " (*Lonely Maiden Productions, LLC v. GoldenTree Asset Management, LP* (2011) 201 Cal.App.4th 368, 384.)

Due to these deficiencies in his briefing, Akhtar has not properly supported his arguments on appeal and has forfeited them.  (See *Ponte v. County of Calaveras* (2017) 14 Cal.App.5th 551, 555 [party "ha[d] not fulfilled his duty to make a coherent legal argument" by failing to cite to the record].)  Thus, Akhtar has failed to overcome the presumption of correctness.  (See, e.g., *Slone v. El Centro Regional Medical Center* (2024) 106 Cal.App.5th 1160, 1172 ["[B]y not citing to specific portions of the record . . . , [the appellant] has not carried his burden on appeal to show the purported error."].)

---

[5]  Undesignated rule references are to the California Rules of Court.

11

C. *The Case Was Timely Brought to Trial Under Section 583.310*

"An action must be brought to trial within five years (§ 583.310) or it shall be dismissed (§ 583.360, subds. (a), (b))." (*Oswald v. Landmark Builders, Inc.* (2023) 97 Cal.App.5th 240, 246.) In addition to appellate forfeiture, Akhtar also forfeited his right to pursue dismissal of the action under the five-year rule by failing to timely object on this ground in the trial court before the trial commenced. (See *Butler v. Hathcoat* (1983) 146 Cal.App.3d 834, 839.) In any event, Akhtar's argument that Zubrick's action was not brought to trial within the five-year period lacks merit. First, the parties stipulated in open court to extend the five-year deadline, which had " 'the effect of extending the statutory period to [beyond] the date to which the trial was postponed.' " (*Munoz v. City of Tracy* (2015) 238 Cal.App.4th 354, 360; see § 583.330, subds. (a), (b) [five-year limit may be extended by written stipulation or by oral agreement made in open court].)

Second, it was *Akhtar* who sought the continuance that he alleges pushed the trial date over the five-year limit. In his August 2022 request for a continuance (which was granted over Zubrick's objection), Akhtar indicated "Defendants stipulate to waive the Five Year Rule but even then, a trial in early October will not violate the Five Year Rule." Akhtar cannot now complain on appeal that the five-year rule was violated. (*M.E. Gray Co. v. Gray* (1985) 163 Cal.App.3d 1025, 1036 ["*plaintiff* whose trial date has been continued on a *defendant's* motion beyond the five-year period, should not suffer mandatory dismissal"].)

Moreover, the deadline under section 583.310 had not yet passed by the time trial began. Zubrick initially had until February 17, 2022, to bring the case to trial under section

12

583.310.  That deadline was extended to August 17, 2022, due to the pandemic emergency order.  (See *Oswald v. Landmark Builders, Inc., supra*, 97 Cal.App.5th at p. 246 ["Due to the COVID-19 pandemic, the Judicial Council of California enacted Rule 10, which provides in subdivision (a):  'Notwithstanding any other law, including . . . section 583.310, for all civil actions filed on or before April 6, 2020, the time in which to bring the action to trial is extended by six months for a total of five years and six months.' "].)  The time limit was further tolled for approximately three more months by Akhtar's bankruptcy filing.  (See § 583.340, subd. (a) [providing for tolling period when "[t]he jurisdiction of the court to try the action was suspended"].)  In its statement of decision the trial court calculated the period as not having yet expired by the time trial began, and Akhtar does not dispute the court's calculations.

In sum, the court was not required to dismiss the case under section 583.310.

D.     *Akhtar Never Sought Section 473 Relief in the Trial Court*

Although Akhtar contends the superior court failed to grant relief under the discretionary provision of section 473, subdivision (b), based on his counsel's sudden withdrawal, Akhtar never sought such relief in the trial court.[6]  (See

---

[6]     Section 473 allows for relief from a judgment in certain situations upon timely application made no more than six months after judgment, in proper form, and accompanied by an attorney's sworn affidavit.  (§ 473, subd. (b).)  The alleged "mistake" in Akhtar's case was counsel's sudden withdrawal.  Notably, Akhtar does not directly challenge on appeal the propriety of the trial

13

*Henderson v. Pacific Gas & Electric Co.* (2010) 187 Cal.App.4th 215, 229 [to qualify for discretionary relief under section 473, subdivision (b), "the party seeking relief must show (1) a proper ground for relief, and (2) 'the party has raised that ground in a procedurally proper manner, within any applicable time limits' "]; accord, *Huh v. Wang* (2007) 158 Cal.App.4th 1406, 1419.) Accordingly, he forfeited any contention of error in the denial of section 473 relief. (See *Howitson v. Evans Hotels, LLC* (2022) 81 Cal.App.5th 475, 489 ["It is well settled that the failure to raise an issue in the trial court typically forfeits on appeal any claim of error based on that issue."]; *Austin v. Los Angeles Unified School Dist.* (2016) 244 Cal.App.4th 918, 928 ["A party seeking relief under section 473(b) must file the motion within a reasonable time but not longer than six months after the judgment or dismissal has been entered. This six-month time limitation is jurisdictional; the court has no power to grant relief under section 473 once the time has lapsed."].)

E.    *The Trial Court Did Not Abuse Its Discretion by Refusing To Continue the Trial*

With respect to the trial court's denial of Akhtar's request for a 30-day trial continuance, in addition to forfeiting his challenge to that ruling due to his failure to comply with the California Rules of Court, Akhtar has failed to show the court abused its discretion.

Trial continuances "are disfavored," and may be granted "only on an affirmative showing of good cause." (Rule 3.1332(c).)

---

court's decision to grant Rodriguez's request to be relieved as counsel.

14

However, "[w]here denial of a continuance would result in manifest injustice . . . the policy disfavoring continuances must give way." (*Hamilton v. Orange County Sheriff's Dept.* (2017) 8 Cal.App.5th 759, 766.) Among the circumstances that may constitute good cause are "[t]he unavailability of trial counsel because of death, illness, or other excusable circumstances" and "the substitution of trial counsel, but only where there is an affirmative showing that the substitution is required in the interests of justice." (Rule 3.1332(c)(3) & (4).) Other pertinent factors include the proximity of the trial date, whether there was any previous continuance or delay of trial, and the prejudice that parties or witnesses would suffer because of the continuance. (Rule 3.1332(d).)

Where a litigant's attorney withdraws from a case just before or during trial, leaving the litigant with insufficient time to procure new counsel, a trial court will very often be justified in granting a continuance. (See *Vann v. Shilleh* (1975) 54 Cal.App.3d 192, 196-198; see also *In re Marriage of Tara & Robert D.* (2024) 99 Cal.App.5th 871, 881 (*Marriage of Tara*) ["Losing counsel shortly before trial often constitutes good cause for a continuance."].) However, even in such circumstances, a trial court is not obligated to grant a continuance, or to grant to one of any particular length. (See *Marriage of Tara*, at p. 882.) The court is obligated only to "conduct the necessary inquiry" (*ibid.*), considering "each request for a continuance must be considered on its own merits" (Rule 3.1332(c)), and "all the facts and circumstances that are relevant to the determination" (Rule 3.1332(d)).

We review a decision denying a trial continuance for an abuse of discretion. (*Oliveros v. County of Los Angeles* (2004)

15

120 Cal.App.4th 1389, 1395 (*Oliveros*).) The "decision to grant or deny [a] continuance is committed to the sound discretion of the trial court" (*Miller v. Bank of America, N.A.* (2013) 213 Cal.App.4th 1, 12), and will be disturbed on appeal only if it is " 'utterly irrational' " (*Reales Investment, LLC v. Johnson* (2020) 55 Cal.App.5th 463, 468).

Akhtar's argument that the court erred in denying a continuance is unavailing for several reasons. First, he failed to meet the requirement to file an ex parte application for a continuance, supported by a declaration. (See Rule 3.1332(b) [a party seeking a continuance "must make the request for a continuance by a noticed motion or an ex parte application . . . with supporting declarations"]; see *Reales Investment, LLC v. Johnson*, *supra*, 55 Cal.App.5th at p. 469 ["Had the trial court granted the [oral] request [for a continuance made on the first day of trial without any written supporting evidence], it would have violated . . . rule 3.1332(b)'s requirement that a request for a trial continuance be made in writing, either by a noticed motion or an ex parte application."]; *County of San Bernardino v. Doria Mining & Engineering Corp.* (1977) 72 Cal.App.3d 776, 783 ["the trial judge could properly consider that . . . the [continuance] motion was not supported by written declarations"].) While representing himself, Akhtar had previously filed such motions and knew the procedure, yet did not do so here; rather, he filed an unsuccessful writ petition in this court.

Second, even if Akhtar's request had been properly made, the trial court properly considered all the relevant circumstances and determined that the exceptional circumstances here justified its denial of the continuance request. To begin with, it was Akhtar's conduct that led his attorney, Rodriguez, to withdraw.

16

Rodriguez relayed she had "grave concerns about . . . the veracity of the defense." Thus, this is unlike the typical situation where a blameless litigant finds himself or herself without representation at the outset of trial. (Cf. *Oliveros*, *supra*, 120 Cal.App.4th at p. 1395 [counsel unavailable due to another trial].)

Moreover, as the court noted, Akhtar had long represented himself in the case, which had been pending for over five years. Akhtar filed motions and ex parte applications while self-represented, demonstrating his ability to navigate the legal process. He was poised to represent himself in a jury trial on cross-claims that implicated the same factual and legal issues. And Rodriguez had only recently entered the case to defend him against Zubrick's claims. Thus, the court could reasonably determine Akhtar would not suffer the same prejudice that parties typically would suffer if their attorney withdrew just before or during trial.

By contrast, Zubrick demonstrated he would have been prejudiced by any further delay. The court considered the fact that one of Zubrick's witnesses had to leave the country because his mother had suffered an aneurysm; that witness agreed to stay in town only long enough to testify on October 14. (See Rule 3.1330(d)(5) [court required to weigh "prejudice that parties or witnesses will suffer as a result of the continuance"].) The court also considered the fact that Zubrick was experiencing serious tax issues that would be abated only once the trial had concluded. (See *Redevelopment Agency v. Tobriner* (1989) 215 Cal.App.3d 1087, 1096 [court properly weighed plaintiff's due process right to have the trial conducted within a reasonable time].)

Additionally, the trial court allowed Akhtar two days to obtain counsel or proceed pro se. Contrary to his contention on

17

appeal that he requested 30 days, he only requested "a few days to prepare for the trial," which the court had already provided. The court properly faulted him for failing to pick up the case files from Rodriguez, despite her making them available to him. Thus, Akhtar did not use the two days he was afforded to get ready for the continuing trial.

In addition, the court was mindful that Akhtar had repeatedly attempted to delay the trial, including by filing for bankruptcy admittedly for the sole purpose of delaying the trial. (Rule 3.1332(d) [court must consider previous continuances or delays].) The court had already granted prior continuances for Akhtar's new attorneys to get up to speed. most recently in August 2022 when Rodriguez requested time to prepare. As discussed, the case was at the brink of the deadline under section 583.310, and the court reasonably could determine any further delay was unwarranted. (See *Oliveros*, *supra*, 120 Cal.App.4th at p. 1396 [court should "consider the degree of diligence in [the] efforts to bring the case to trial"]; *Thatcher v. Lucky Stores, Inc.* (2000) 79 Cal.App.4th 1081, 1083 [trial court did not abuse its discretion in denying a continuance where the plaintiffs "had a history of dilatory prosecution of their action"].)

Before denying the further continuance request, the court weighed the appropriate factors. We find no abuse of discretion given the unique circumstances here.

We further note Akhtar has not shown that a continuance to locate new counsel would have resulted in a more favorable outcome. First, Akhtar's claim that a new attorney could have made a difference is speculative, as he provides no indication that another lawyer was available. (*See Marriage of Tara*, *supra*, 99 Cal.App.5th at p. 888 [no prejudice from denial of continuance

18

where litigant made no representation regarding the availability of another lawyer had the court granted him a continuance].) Akhtar's difficulty maintaining consistent representation throughout the case undermines his contention that he could have secured new counsel.

Akhtar also fails to identify anything specific—a different legal strategy, witness, or evidence—that would have resulted in a more favorable outcome. (See *Marriage of Tara, supra,* 99 Cal.App.5th at p. 888 [affirming denial of a continuance to seek new counsel where the party "fails to explain what else an attorney could have argued or how the court's ruling affected his case"]; see also *Qaadir v. Figueroa* (2021) 67 Cal.App.5th 790, 814 [affirming denial of a request for a continuance where defendant failed to point to any testimony that was not included at trial].) Akhtar, when represented by counsel, submitted declarations in lieu of direct testimony, both for his own testimony and from his handwriting expert, who opined that Zubrick's signature was genuine. Moreover, Akhtar cross-examined all seven witnesses at length and was given substantial leeway by the court, allowing him to mount a meaningful and substantive defense.

/ / /

/ / /

/ / /

19

## DISPOSITION

The judgment is affirmed.  Zubrick is entitled to recover his costs on appeal.


STONE, J.

We concur:


MARTINEZ, P. J.


PULOS, J.[*]

---

[*] Judge of the San Diego County Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.